GULF OIL CORPORATION, Appellant,

v.

Eugene GRIFFITH, and wife, Larrencie Griffith, Appellees.

No. 20687.

United States Court of Appeals
Fifth Circuit.

April 23, 1964.

Rehearing Denied June 1, 1964.

---

**730**

Jerry L. Buchmeyer, Pinkney Grissom, Timothy E. Kelley, Frank Finn, Jr., Dallas, Tex., Pinkney Grissom, Jerry L. Buchmeyer, Dallas, Tex., (Thompson, Knight, Wright & Simmons, Dallas, Tex., of counsel), for appellant.

James T. Jeter, Shreveport, La., Russell Baker, Dallas, Tex., Franklin M. Jones, Sr., Marshall, Tex., Baker, Jordan, Shaw & Foreman, Dallas, Tex., (Harvey L. Davis, Dallas, Tex., of counsel), for appellees.

Before RIVES, BELL, and WRIGHT,* Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

Appellees sued to recover for the wrongful death of their sons. Art. 4671, Vernon's Texas civil statutes.

* Of the D.C.Circuit, sitting by designation.

Their sons, ages 12 and 20 at the time of their death, were electrocuted in the waters of Caddo Lake on the Big Cypress River in Harrison County, Texas while on an outing with their father. They were engaged in water skiing and at the time the younger son was being pulled on skis toward Big Pine Lodge where they planned to eat. The father was operating the boat to which the ski rope was attached at a speed of 25 miles per hour. The older son was sitting in the stern of the boat watching his brother.

Gulf was the owner of a floating gasoline dispensing barge near the lodge. The outer edge of the barge was forty feet from shore. The barge was constructed by Ward, an independent contractor, for Gulf, and turned over to Gulf two weeks earlier. It was in turn leased to Mr. and Mrs. Womack. Gulf and Ward were the named defendants. The gasoline pumps situated on the barge, two in number, were electrically operated by power running from a main meter pole located on shore to a switch box located on a pole in the water near the barge.

At a point where the son on skis was eight to ten feet from the barge, he dropped the tow rope, threw up his arms and fell over on his right shoulder, landing some two to four feet from the barge. The other son immediately said to his father: "Daddy, Hanky's hurt. He's threshing the water." The father turned the boat around as quickly as he could and headed back toward the barge to pick up his son who was by that time lying motionless in the water. Both boys had on life preservers. The son in the boat dove into the water to help his brother. As he came to the surface of the water his face was contorted, his hands jerked, and he said: "Oh, God, Daddy, I am electrocuted, don't * *", and he then lay face down in the water and made no further movement.

The father immediately jumped or dove into the water to rescue his sons.

As he did so he felt an explosion in his chest, his hands tightened and he had difficulty breathing. Based on his experience with electricity, he recognized this as an electrical shock, and the shock forced him back each time he attempted to reach his younger son. He shouted to Mrs. Womack who was standing on shore to cut off the electricity. She, in turn, relayed the message to a nearby workman who then pulled the main switch, the electrical current disappeared, and the father was able to reach his son and take him ashore. Artificial respiration was applied to no avail. In the meantime no one would enter the water, the body of the older son was floating down the river and the father finally was able to recover it.

The jury returned a verdict against Gulf, but in favor of Ward. The negligence alleged against Gulf, insofar as pertinent to our disposition of this appeal, included a charge of having failed to inspect the barge before placing it in use, and of having failed to exercise ordinary care in the selection of a competent and experienced person to wire the barge.

The expert witnesses all agreed that an electrical current or field would be produced in the water if a defect or short existed in the wiring on the barge. They disagreed as to its sufficiency to kill the boys under the circumstances, but two were of the view that it would. One testified that the current would fan out to produce a region of extreme hazard in the area of from eight to ten feet in front of the barge. This was the area in question. It was undisputed that there was no ground wire on the barge, and that this would have prevented the charging of the water in the event of a defect or short. There was also evidence that two persons felt a shock on the same day while handling the gasoline pump nozzle. Moreover, the proof was such as would support an inference that the wiring of the barge did not conform to recognized minimum safety requirements.

The motion of Gulf for a directed verdict on the trial was denied, and thereafter its motion for judgment notwithstanding the verdict was also denied. The only question preserved for appeal, and before us, is whether the evidence supports the verdict of the jury on any one of the submitted allegations of negligence. The court instructed the jury with respect to the allegations of negligence, and to the effect that a verdict might be rendered in favor of the plaintiffs as against Gulf and Ward concurrently, or against either of them. The only objection to the instruction was that there was no evidence to support a finding of negligence. Gulf did not object to any inconsistency in the verdicts in favor of Ward and against Gulf by motion for new trial or otherwise, and presents no such contention on this appeal. Cf. Dixie Ohio Express Co. v. Poston, 5 Cir., 1948, 170 F.2d 446.

■■ It is well established that the verdict must stand unless appellant can show that there is no substantial evidence to support it, considering the evidence in the light most favorable to appellees, and clothing it with all reasonable inferences to be deduced therefrom. Hanover Fire Insurance Company v. Sides, 5 Cir., 1963, 320 F.2d 437; and Greyhound Corporation v. Dewey, 5 Cir., 1957, 240 F.2d 899. So tested, it becomes clear that the evidence is ample to support findings that the water was electrically charged; the current came from the barge; it was sufficient to cause the death of the boys, and the wiring of the barge did not meet safe practices, among other ways, in that there was no ground wire and a ground wire would have prevented the deaths. Gulf failed to inspect and thereby discover that there was no ground. We need go no further to affirm. Cf. Otis Elevator Company v. Robinson, 5 Cir., 1961, 287 F.2d 62, on proof of liability by circumstantial evidence where the defect leading to a casualty was never discovered.

Affirmed.