Cornelius HURLEY and Nuala Hurley, his wife, Plaintiffs-Appellants,

v.

LARRY'S WATER SKI SCHOOL, a Florida Corporation, Defendant-Appellee.

No. 84–5460.

United States Court of Appeals, Eleventh Circuit.

June 11, 1985.

Harry G. Carratt, Fort Lauderdale, Fla., for plaintiffs-appellants.

Joseph H. Lowe, Miami, Fla., for defendant-appellee.

Before VANCE and ANDERSON, Circuit Judges, and HENLEY *, Senior Circuit Judge.

VANCE, Circuit Judge:

Plaintiff Cornelius Hurley filed this suit after he injured his right leg while taking skiing lessons from the defendant, Larry's Water Ski School ("Larry's"), in Miami. On appeal, Hurley contends that the dis-

* Honorable J. Smith Henley, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

trict court erred in granting the defendant's motion for a directed verdict on the breach of implied warranty and strict liability counts at the close of the plaintiff's evidence.[1] We find that the trial court erred in granting a directed verdict on the breach of implied warranty count since there was an implied warranty of fitness that the ski equipment supplied by Larry's pursuant to the contract for instruction was fit for the purpose of teaching individuals to ski. We therefore affirm in part, reverse in part and remand.

Cornelius Hurley severely injured his right leg on June 3, 1982, during a skiing lesson. The ski school program was designed to teach beginners to ski and an individual received five lessons for $30.00. Larry's provided all the necessary skiing equipment and individualized instruction. Hurley, who had never skied before, agreed to take the lessons after being approached by one of Larry's sales representatives who assured him that he would be able to ski after the lessons. He testified that after several lessons he was attempting to "get up" on the skis without assistance when suddenly he felt the rope give way on his right-hand side. This caused him to lose his balance and fall into the water. Either just before or during the course of his fall the wooden tow handle that Hurley was holding snapped and evidently struck his right leg. He suffered a four-inch cut which required immediate stitching and additional medical treatment after infection set in. The injury was continuing to give Hurley trouble at the time of trial.

Hurley filed this diversity suit alleging that his injury was caused by the faulty and negligent assembly of the tow handle and tow rope used by Larry's in towing its skiers. Hurley's complaint sought relief under three theories: (1) negligence; (2) breach of implied warranty; and (3) strict liability.

At trial, John Weisberg testified that he was the school's day-to-day operator and personally responsible for making all the tow handles and ropes used by Larry's. The tow handles and ropes are made from polypropylene rope and wood doweling purchased from a local hardware store. The doweling is birch wood one inch in diameter. The rope is one-quarter inch thick. To make the tow handles, Weisberg cuts the wood doweling into sections eighteen inches long and drills a three-eighths inch hole approximately one and one-half inches from each end of the handle. The one-quarter inch tow rope is then passed through the two holes to form a "U" which extends about two feet from the handle. The "U" is then connected to the back of the boat by a seventy-five foot piece of polypropylene rope. According to Weisberg, he has used this method in making all the tow ropes and handles used by Larry's during the past fourteen years. The tow handles and ropes are checked daily for fraying and wear and tear. The equipment is replaced as needed. Weisberg admitted that some of Larry's customers had suffered minor injuries from falls over the years, but said that none of these falls were caused by equipment defects. He also stated that Larry's had never had another tow handle or rope break.

Larry's asserted that the tow handle had broken in this case only because Hurley continued to hold onto it after he had fallen in spite of several warnings not to do so. Weisberg, who was driving the boat at the time of the accident, testified that he felt a pull against the boat when Hurley fell. He said this was unusual because the boat normally accelerates when a skier falls since the skier releases the rope immediately. He explained that when a skier continues to hold onto the rope after falling it creates a "drag" against the boat. He believed that the pull against the boat which he felt was caused by Hurley's failure to release the handle immediately upon falling.

1. Hurley also contends that the trial court erred in refusing to grant a directed verdict in his favor on the negligence count. Because we find that the negligence question was properly submitted to the jury, however, we summarily dispose of that contention.

Hurley produced an engineering expert, Fred Berlowe, who testified that the rope and wood doweling used by Larry's to construct the tow rope and handle were of inferior strength and quality for skiing. According to Berlowe, the rope used by Larry's came without a statement or guarantee as to minimum strength and had a tensile strength of only 900 pounds. He also noted that the United States Skiing Association standard rope has a tensile strength of 1300 pounds. He testified that the tow handle would have been better suited for skiing if it had been made of a metal such as aluminum or at least a harder wood such as ash or hickory instead of birch. In his opinion, if the handle had been made of a more suitable material it would not have broken. His testimony also indicated that if a rope with the proper tensile strength had been used, any injury which might have occurred would have been considerably less severe.

Larry's moved for a directed verdict on all three counts at the close of the plaintiff's evidence. After hearing arguments, the court granted the motion as to the breach of warranty and strict liability counts because it found that Larry's was not a manufacturer or assembler as those terms are used in Florida's products liability law. The negligence count went to the jury, which returned a verdict for the defendant. After filing an unsuccessful motion for a new trial, Hurley brought this appeal.

Hurley contends that the trial court erred in directing a verdict on the breach of implied warranty and strict liability counts for two reasons. First, he contends that the district court erred in failing to recognize that Larry's is a manufacturer or assembler. Second, Hurley contends that even if Larry's is not a manufacturer or assembler, it is nevertheless subject to suit under the breach of implied warranty and strict liability theories since it supplied the allegedly defective equipment.

In Florida a manufacturer, assembler or seller may be sued, subject to certain limitations, under breach of implied warranty and strict liability theories whenever personal injury or property damage results from the use of a product it has manufactured, assembled or sold. *See, e.g., West v. Caterpillar Tractor Co.,* 336 So.2d 80 (Fla.1976). The undisputed evidence is that Weisberg, in his capacity as Larry's day-to-day operator, purchased the materials and made the tow handle and rope which Hurley was using when he was injured. Hurley contends that the evidence thus establishes that Larry's was the manufacturer or assembler of the allegedly defective tow handle and rope in question. As support for this proposition, Hurley cites the following cases: *West v. Caterpillar Tractor Co. supra; Cunningham v. Lynch-Davidson Motors, Inc.,* 425 So.2d 131 (Fla.Dist.Ct.App.1982) *petition for review denied,* 436 So.2d 99 (Fla.1983); *Favors v. Firestone Tire & Rubber Co.,* 309 So.2d 69 (Fla.Dist.Ct.App.1975); *A.E. Finley & Associates, Inc. v. Medley,* 141 So.2d 613 (Fla.Dist.Ct.App.), *cert. denied,* 148 So.2d 279 (Fla.1962). The cases, however, all concern vehicles or heavy equipment which were assembled or modified prior to sale or lease by a manufacturer or dealer in those goods. Although the Florida courts did extend manufacturer liability to one who assembles parts manufactured by others, we cannot fault the district court for declining to enlarge the category of manufacturers to include Weisberg's work for Larry's. It would require a strained reading of Florida law to conclude that Larry's is a manufacturer or assembler just because one of its employees makes its tow ropes and handles by drilling two holes in a piece of wood doweling and running a one-quarter inch rope through them.

Hurley correctly points out that Larry's may be liable under a breach of implied warranty or strict liability theory even if it were not the manufacturer, assembler or seller of the tow rope and handle in question. The Florida courts have extended products liability law to hold lessors and bailors for hire liable for breach of implied warranty and under strict liability in the same manner that manufacturers, assem-

blers and sellers may be. *See W.E. Johnson Equipment Co. v. United Airlines,* 238 So.2d 98 (Fla.1970); *Futch v. Ryder Truck Rental,* 391 So.2d 808 (Fla.Dist.Ct. App.1980); *Ford v. Highlands Insurance Co.,* 369 So.2d 77 (Fla.Dist.Ct.App.), *cert. denied,* 378 So.2d 345 (Fla.1979). Florida's decision to extend these types of liability to leases and bailments stemmed from its perception of the need to extend the same protection to consumers who rent and lease as had already been afforded to consumers who buy. As the Florida Supreme Court stated in *Johnson Equipment:*

> The reasons for imposing the warranty of fitness in sales cases are often present in lease transactions. Public policy demands that in this day of expanding rental and leasing enterprises the consumer who leases be given protection equivalent to the consumer who purchases. Although a sale transfers ownership and a lease or bailment merely transfers possession and anticipates future return of the chattel to the owner, there may be as much or more reliance on the competence or expertise of the lessor than on the competence of the seller.... The lessor as well as the seller is able to sustain or distribute as a cost of doing business the expense of protecting himself against damages sustained by breach of this warranty.

*Johnson Equipment,* 238 So.2d at 100. The court went on to announce the following rule:

> In the absence of an agreement to the contrary, where the lessor has reason to know any particular purpose for which the leased chattel is required and that the lessee is relying upon the lessor's skill or judgment to select or furnish a suitable chattel, there is an implied warranty that the chattel shall be fit for such purpose.

*Id.*

■ We cannot accept the proposition that Hurley had a lease or bailment agreement for the skiing equipment. By definition, both a lease and a bailment require that at some point the lessee or bailee have possession and control over the leased or bailed property. Hurley is unable to point to any moment in time at which he maintained undisputed possession and control over the tow handle and rope in question, which were at all times connected to the boat.

■ The fact that the technical requirements of a lease or bailment were not met does not warrant a directed verdict for Larry's on both strict liability and implied warranty, however. Hurley claims that even if there were technically no lease or bailment relationship between the parties, Larry's should nevertheless be liable under the implied warranty and strict liability theories since it supplied the allegedly defective equipment pursuant to the contract for ski instruction. Hurley argues that as the supplier, Larry's position was essentially the same as that of a seller, lessor or bailor for hire and it should be subject to the same liability. *Cf. Johnson Equipment,* 238 So.2d at 100. We agree that the implied warranty of fitness is applicable to this situation. At the heart of the *Johnson Equipment* opinion is the Florida Supreme Court's desire to protect all consumers— whether they be buyers, lessees or bailees—from defective products. The same concerns which the court expressed for lessees and bailees are present in the instant case. Hurley, who had never skied before, was relying totally on Larry's to provide him with proper instruction and with equipment fit for the purpose of learning to ski.

Larry's has freely acknowledged from the beginning that it solicited Hurley to enter into a contractual agreement for skiing lessons. If the contract for lessons had not included free use of the equipment and Larry's had furnished the equipment to Hurley under a separate rental agreement or for an additional fee, Hurley would unquestionably have had a cause of action against Larry's. *See id.* Larry's conduct in supplying the equipment under the contract for lessons is precisely the same. Larry's stated in its brief and reiterated at oral argument before this court that it was

implicit in the agreement that the fee for the ski lessons included the use of a boat, skis and a tow line. Equally implicit in that agreement, we believe, was an implied warranty that the equipment supplied by Larry's was fit for the purpose of teaching an individual to ski. While we have been unable to find a Florida case directly on point, our holding is based on our understanding of the Florida Supreme Court's reasoning in *Johnson Equipment* and the subsequent application of that case by the Florida district courts of appeals. *See Marini v. Town & Country Plaza Merchants Association,* 314 So.2d 180, 182 (Fla.Dist.Ct.App.1975) (Boyer, J., specially concurring) ("I am not prepared at this time to categorically hold that there can be no implied warranty in the absence of a sale or a lease. I can conceive of factual situations involving neither in which, in my view, warranties might well be implied."); *Washwell, Inc. v. Morejon,* 294 So.2d 30, 32–33 (Fla.Dist.Ct.App.1974), *cert. denied,* 310 So.2d 734 (Fla.1975) (upholding jury verdict based on breach of implied warranty theory for a woman injured while using a defective washing machine in a laundromat although the defendant laundromat was neither the manufacturer nor distributor of the washing machine, and a lease or bailment arrangement between the plaintiff and the laundromat was never clearly established).

We conclude that the district court erred in directing a verdict on the breach of implied warranty count. In so doing, we express no opinion on the merits of Hurley's breach of warranty claim. We find only that it should have been presented to the jury.

The strict liability claim presents a more difficult question, one on which Florida law gives no useful guidance. Strict liability is conceptually distinct from the theory of implied warranty.[2] It is premised on a concern that all persons coming into contact with a defective product have recourse against those putting it on the market. In contrast, implied warranty theory is grounded in the reliance of a product user on the representations of another. Strict liability theory is not clearly appropriate for this case, where a student was injured by equipment his instructor supplied pursuant to a contract for lessons. There was a contract, but no lease or bailment agreement between the parties, and as the appellant concedes, the addition of the strict liability count to the breach of warranty claim is of no practical benefit to his case. Under the circumstances, we defer to the judgment of the Florida district judge who directed a verdict on the strict liability count.

AFFIRMED in part, REVERSED in part and REMANDED.

---

**2.** Breach of implied warranty and strict liability are somewhat similar yet very distinct liability theories. While they often are both applicable to the same set of facts, this is not always the case. In many instances, one theory is applicable when the other is not. *See West v. Caterpillar Tractor Co.,* 336 So.2d 80, 84–89 (Fla. 1976). Our reading of the Florida case law requires that we draw a distinction between the two in this case. In the products liability context, we have found no Florida cases which indicate that the theory of strict liability extends or should extend beyond the case in which there is at least a lease or bailment relationship between the parties. These same Florida cases, however, do indicate that a plaintiff may bring suit under implied warranty theory even in the absence of a lease or bailment agreement between the parties.