**Matter of Petition of BEISWENGER ENTERPRISES CORP., Plaintiff,**

**v.**

**Kathleen CARLETTA, et al., Defendants.**

**No. 91–149–CIV–T–17.**

United States District Court,
M.D. Florida,
Tampa Division.

Nov. 13, 1991.

Christopher Rogers Fertig, Fertig & Gramling, Fort Lauderdale, Fla., James E. Ross, James E. Ross & Associates, Houston, Tex., for plaintiff.

Gary D. Fox, Stewart, Tilghman, Fox & Bianchi, P.A., Miami, Fla., Robert Henry Dillinger, St. Petersburg, Fla., for defendants.

## ORDER

KOVACHEVICH, District Judge.

This cause is before the court on the following:

1. Motion to Strike Pleadings, Dkt. 16.
2. Motion to Strike Pleadings, Dkt. 17.
3. Response to Motion to Strike Pleadings, Dkt. 20.
4. Response to Motion to Strike Pleadings, Dkt. 21.

## I. STANDARD OF REVIEW

 Motions to strike on the grounds of insufficiency, immateriality, irrelevancy, and redundancy are not favored, often being considered "time wasters", and will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties. *Poston v. American President Lines, Ltd.*, 452 F.Supp. 568, 570 (S.D.Fla. 1978), citing *Augustus v. Board of Public Instruction*, 306 F.2d 862 (5th Cir.1962). In evaluating a motion to strike, the court must treat all well pleaded facts as admitted, and cannot consider matters beyond the pleadings. *U.S. Oil Co., Inc. v. Koch Refining Co.*, 518 F.Supp. 957, 959 (E.D.Wis.1981).

## II. FACTS

Allegedly, on December 4, 1990, George Myers ("Myers") and Kathleen Carletta ("Carletta") were paying passengers and parasail riders on the M/V Skyrider Express, a vessel owned and operated by Beiswenger Enterprises Corp. ("Beiswenger"), a Florida corporation. Dkt. 1 at 3. While Myers and Carletta were aloft, the tow line to the parasail gondola was severed to allow the gondola and passengers to settle into the water. Dkt. 1 at 2. Before the vessel retrieved Myers and Carletta from the water, the tow line wrapped around one of Myers' ankles. Subsequently, the canopy filled with a gust of wind and arose from the water, lifting Myers from the water and eventually dragging him over and through objects on land. Myers sustained bodily injuries from which he died on December 18, 1990.

Petitioner, Beiswenger, subsequently filed a Complaint, seeking to contest liability or, if adjudged liable, to limit liability to $40,090, the value of the vessel and its freight on the aforementioned voyage, as provided by 46 U.S.C.App., sections 183–85, 188. Dkt. 1 at 4.

Carletta claims to have sustained injuries resulting from the above incident. Pursuant to Supplemental Rule F(5), Federal Rules of Civil Procedure, Claimant, Carletta, asserted personal physical and emotional injuries against Beiswenger. Dkt. 10. The claim also alleged that at the time of the incident, the Petitioner had an insurance policy in full force and effect. The insurance policy was attached as Exhibit "A". Dkt. 10 at paragraph 9.

Pursuant to Supplemental Rule F(5), Federal Rules of Civil Procedure, Claimants, Estate of George Myers; Pauline Walls, as next friend and mother of Shante Myers; and Yolanda Williams, as next friend and mother of Julian Myers, asserted a claim against the Petitioner. Dkt. 12. The claim alleges that the decedent, George Myers, was a resident of New York, and asserted that the laws of the State of New York should apply. Dkt. 12 at paragraph 9. In addition, Claimants made the same allegation of insurance as in Carletta's claim, Dkt. 10, paragraph 9. Dkt. 12 at paragraph 10.

Pursuant to Rule 12(f), Federal Rules of Civil Procedure, Petitioner filed a Motion to Strike the allegations of insurance from both of the above claims. Dkt. 17. Petitioner also filed a Motion to Strike paragraph 9 of the Claim of the Estate of George Myers, alleging that the laws of the State of New York apply. Dkt. 16.

## III. ISSUES

1. WHETHER ALLEGATIONS OF INSURANCE ARE IMMATERIAL.

 The insurance company is not a party to the action. Claimants must recover on the basis of liability, not upon the extent of insurance coverage. The attachment of the insurance policy as exhibit and its in-

corporation as part of the allegation is not essential to the claims against Petitioner.

The Court should not determine questions of insurance coverage and liability for indemnification, when the contingencies giving rise to them may never occur. The Fifth Circuit has stated that "it is not the function of a United States District Court to sit in judgment on these nice and intriguing questions which today may readily be imagined, but may never come to pass." *American F. & C. Co. v. Pennsylvania T. & F. Mut. Cas. Ins. Co.*, 280 F.2d 453 (5th Cir.1960). To do so would amount to an advisory opinion, which this Court cannot give. *Muskrat v. United States*, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1910).

There is also merit to Petitioner's contention that reference to insurance may be prejudicial. Therefore, Petitioner's Motion to Strike allegations of insurance will be granted.

2. WHETHER THE ALLEGATION THAT NEW YORK LAW SHOULD APPLY ON THE BASIS OF THE DECEASED'S RESIDENCY IS CONTRARY TO ESTABLISHED LAW.

■ In 28 U.S.C. Section 1333(1), Congress granted federal district courts with original and exclusive jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." As a general proposition, all torts occurring on vessels on the high seas, or upon inland or territorial navigable waters are considered within admiralty subject matter jurisdiction. *The Plymouth*, 70 U.S. (3 Wall.) 20, 18 L.Ed. 125 (1865). However, as noted by the Eleventh Circuit in *Harville v. Johns–Manville Products Corp.*, 731 F.2d 775, 780 (11th Cir.1984), "Because exercise of admiralty jurisdiction and invocation of substantive maritime law may tend to pre-empt state regulation of matters traditionally within the ambit of local control, the courts have preferred to read congressional grants of admiralty jurisdiction restrictively."

Prior to 1972, many federal courts employed a strict "location-only" test to determine whether a tort claim was subject to maritime jurisdiction. *Harville v. Johns–Manville Products Corp.*, 731 F.2d at 780, citing *Grant Smith–Porter Ship Co. v. Rohde*, 257 U.S. 469, 476, 42 S.Ct. 157, 158, 66 L.Ed. 321 (1922); *Weinstein v. Eastern Airlines*, 316 F.2d 758, 765 (3d Cir.1963). However, in *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), the Supreme Court rejected the "location-only" test. The Court stated that in addition to the traditional location requirement, the wrong must bear a "significant relationship to traditional maritime activity." 409 U.S. at 268, 93 S.Ct. at 504. Although the Court limited its holding to aviation claims, its rationale has been applied to other tort cases. See, *e.g.*, *Kelly v. Smith*, 485 F.2d 520 (5th Cir.1973), *cert. denied*, 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974).

As noted by the Eleventh Circuit Court, the nexus test did not replace the location test, but merely supplemented it. *Harville v. Johns–Manville Products Corp.*, 731 F.2d at 781–82, citing *Boudloche v. Conoco Oil Corp.*, 615 F.2d 687 (5th Cir.1980) (claim of plaintiff standing on shore when struck by a boat being removed from the water not within admiralty jurisdiction because situs requirement not met). Thus, the tort still must occur at a maritime situs.

Under the locality test, the tort occurs "where the alleged negligence took effect," rather than where the negligent act was done. *Harville v. Johns–Manville Products Corp.*, 731 F.2d at 782, citing *Executive Jet*, 409 U.S. at 266, 93 S.Ct. at 504; *The Plymouth*, 70 U.S. (3 Wall.) at 34–35; *In re Dearborn Marine Service, Inc.*, 499 F.2d 263, 274 (5th Cir.1974), *cert. dismissed*, 423 U.S. 886, 96 S.Ct. 163, 46 L.Ed.2d 118 (1975).

■ Regarding Carletta's Claim, both the allegedly negligent act and its alleged effect would have necessarily occurred in navigable waters. However, regarding Myers' Claim, although the alleged negligent act may have occurred in navigable

waters, its alleged effect took place both in navigable waters and on shore. Such incidents are covered by the Admiralty Extension Act, 46 U.S.C.App., section 740, which extends admiralty jurisdiction to cover claims for on-shore injuries caused by a vessel on navigable waters. Thus, the requirements of the location test have been met.

Since the Supreme Court established the nexus requirement in *Executive Jet Aviation, Inc. v. City of Cleveland,* federal courts have struggled to find a meaningful test for determining what constitutes traditional maritime activity. The Fifth Circuit Court identified four factors as relevant in analyzing the nexus between a given claim and traditional maritime activity: "the functions and roles of the parties; the types of vehicles and instrumentalities involved; the causation and the type of injury; and traditional concepts of the role of admiralty law." *Kelly v. Smith,* 485 F.2d at 525.

Applying this nexus test in *Harville v. Johns–Manville Products Corp,* 731 F.2d at 783–787, the Eleventh Circuit Court noted that five other Courts of Appeals have demonstrated little agreement about those factors that are critical to the "nexus" analysis. *Id.* at 783. Analyzing all four factors, the court added that "exclusive focus on any single aspect of the plaintiffs' claims produces a mechanistic analysis not entirely consistent with the thrust of *Executive Jet.*" *Id.* at 784.

The function and role of Beiswenger was to provide a commercial recreational service to interested persons. In *Foremost Ins. Co. v. Richardson,* 457 U.S. 668, 674–75, 102 S.Ct. 2654, 2658, 73 L.Ed.2d 300 (1982), the Supreme Court rejected determination on the basis of commercial versus private activity. The Court explained that the tortious activity involved, whether commercial or private, must implicate the need for uniform governance of navigable waters. *Id.* The Court also noted, "Not every accident in navigable waters that might disrupt maritime commerce will support federal jurisdiction." *Id.* at note 5.

Parasailing has limited impact on maritime commerce. In addition, it is unlikely that this activity requires uniform governance beyond the general applicable navigational rules, none of which were alleged to have been violated. Thus, Beiswenger's "role and function", although related to maritime commerce, do not call for the application of admiralty jurisdiction.

■ The "types of vehicles and instrumentalities" involved in this case include both traditional and nontraditional. As in *Kelly v. Smith,* 485 F.2d at 526, "the vehicle involved was a boat, not an automobile or airplane, whose function was transportation across navigable waters, a traditional role of watercraft." However, although involvement of vessels strongly supports the application of admiralty law, it is not dispositive. See, *e.g., Harville v. Johns–Manville Products Corp.,* 731 F.2d 775 (1984) (exposure to asbestos aboard vessels insufficient to support admiralty jurisdiction); *Reed v. United States,* 604 F.Supp. 1253 (N.D.Ind.1984) (diving off of boat into shallow navigable waters is not engaged in or connected with a traditional maritime activity for the purposes of establishing admiralty jurisdiction).

In this case, allegations of negligence relate directly to the use and handling of the parasail and the riders subsequent to their descent. In addition, both Carletta's and Myers' injuries were not claimed to have occurred while being towed or even still attached to the vessel, but subsequent to the release of the tow line. Thus, in this case, involvement of a vessel is not dispositive and does not suggest that the dispute remain within admiralty jurisdiction.

In this case, the "causation and type of injury" constitute yet another factor against the application of admiralty jurisdiction. The claim of the estate and minor children of Myers includes injuries caused when the parachute dragged Myers into parked cars, fences, and construction debris. Carletta's claim includes neck and spinal injuries resulting from the plunge into the water and subsequent removal from the water. The nature of such injuries is not commonly maritime.

The Eleventh Circuit Court has noted that the final factor, "traditional concepts of the role of admiralty law", is "clearly the most important." *Harville v. Johns–Manville Products Corp.,* 731 F.2d at 785. The court further noted:

> In *Executive Jet* the Supreme Court described admiralty as dealing with navigational rules, apportionment of liability for maritime disasters, protection of seamen aboard ship, and establishment of uniform rules for maritime liens, captures of prizes, liability for cargo damage, and claims for salvage. 409 U.S. at 269–70, 93 S.Ct. at 505. The Court has also stated that "the primary focus of admiralty jurisdiction is unquestionably the protection of maritime commerce." *Foremost Insurance,* 457 U.S. at 674, 102 S.Ct. at 2658. Our precedent indicates that "[a]dmiralty jurisdiction in the federal courts was predicated upon the need for a uniform development of the law governing the maritime industries." *Peytavin v. Government Employees Insurance Co.,* 453 F.2d 1121, 1127 (5th Cir.1972). Disputes not involving these interests are not within the admiralty jurisdiction of the federal courts.

*Id.* at 786.

As in *Harville v. Johns–Manville Products Corp.,* the issues involved in this litigation present questions of tort law traditionally committed to local resolution. Federal interest in these claims is insufficient to justify supplanting state law with federal common law of admiralty. See, *e.g., Hurley v. Larry's Water Ski School,* 762 F.2d 925 (11th Cir.1985) (water skier brought suit under Florida law for injuries during ski lessons); *Gulf Oil Corp. v. Griffith,* 330 F.2d 729 (5th Cir.1964) (action for wrongful death of skiers electrocuted by electrical current from barge brought under Texas law).

Review of the four *Kelly v. Smith* factors indicates that there is little support for the application of maritime jurisdiction to this case. Accordingly, this Court holds that this case is outside the maritime jurisdiction of the federal courts. In addition, because the claims are not cognizable un-der federal maritime jurisdiction, there is no justification for supplanting state tort law with the substantive law of admiralty.

 Assuming that the claimants can support a diversity action for tort, substantive law of Florida rather than New York is applicable as Florida has a more significant relationship to the litigation than New York. Consequently, this Court holds that the law of the State of Florida applies to this case. Thus, the Motion to Strike the allegation that New York applies to this action will be granted.

This Court notes that the District Court of Hawaii ruled dissimilarly in a nonpublished opinion. *In the Matter of Skyrider,* 1990 WL 192479 (D.Hawaii 1990). However, this Court is not obligated to follow that opinion. *Jorsch v. LeBeau,* 449 F.Supp. 485 (D.C.Ill.1978). Accordingly, it is

ORDERED that Motions to Strike are granted.

DONE and ORDERED.