**UNITED STATES of America, Plaintiff,**

v.

**GEORGIA DEPARTMENT OF NATURAL RESOURCES, Defendant.**

**Civ. A. No. 1:94–CV–2993–JOF.**

United States District Court, N.D. Georgia, Atlanta Division.

Aug. 2, 1995.

Patricia Rebecca Stout, Russell Glenn Vineyard, Office of United States Attorney, Northern District of Georgia, Atlanta, GA, Naikang Tsao, U.S. Department of Justice, Environment & Natural Resources Division, Washington, DC, for plaintiff.

Diane L. DeShazo, State of Georgia Law Department, Atlanta, GA, Alan Gantzhorn, Office of State Attorney General, Atlanta, GA, for defendant.

*ORDER*

FORRESTER, District Judge.

This matter is before the court on the parties' cross motions for summary judgment. There are no factual disputes and the sole legal issue to be decided by this court is whether the Clean Air Act contains a waiver of sovereign immunity permitting a state to

1. The Army facility accused of violating state environmental laws is the Fort Benning Military Installation near Columbus, Georgia.

2. The prison facility in question is the United States Penitentiary in Atlanta, Georgia.

3. O.C.G.A. § 12–9–23(a) (1992) provides that violations of the GAQA may be punished by civil penalties of not more than $25,000.00 per day.

4. O.C.G.A. § 12–9–7(a) (Supp.1994) provides that one must obtain a permit for each source

impose punitive civil fines on the United States.

## I. FACTS

On March 21, 1994, the Georgia Department of Natural Resources ("GDNR") filed administrative petitions with the Georgia Board of Natural Resources seeking to impose punitive civil penalties on the United States Army[1] and the Federal Bureau of Prisons[2] for alleged violations of the Georgia Air Quality Act ("GAQA"), O.C.G.A. § 12–9–1, *et seq.*[3] The GDNR alleged that the federal facilities had modified their boiler systems without first obtaining either a permit[4] or an amendment to an existing permit.[5]

The United States filed a motion to dismiss. In support of their position, the United States pointed to a recent Supreme Court ruling that similar provisions of the Clean Water Act ("CWA") and the Resource Conservation and Recovery Act ("RCRA") did not waive the sovereign immunity of the United States to punitive civil fines. *See U.S. Department of Energy v. Ohio*, 503 U.S. 607, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992). In response, GDNR contended that the federal facilities[6] and citizen suit[7] provisions of the Clean Air Act contain sufficient waivers of sovereign immunity.

On June 15, 1994, Administrative Law Judge ("ALJ") Mark A. Dickerson denied the motion to dismiss. The ALJ noted that, without clear and binding precedent, he lacked the authority to decide the sovereign immunity issue and either ignore the Georgia statute or decide that the Georgia Assembly had exceeded its power in permitting the state to assess civil fines against federal facilities. On October 14, 1994, the ALJ entered final judgment and assessed a civil penalty of $10,000 against each of the facilities.

"capable of causing or contributing to the emission of air contaminants."

5. In addition, it was alleged that the federal facilities had failed to maintain fuel consumption records as the terms of the permits require.

6. 42 U.S.C. § 7418(a) (Supp.1995).

7. 42 U.S.C. § 7604(e) (1983).

**1466**

On November 8, 1994, Plaintiff United States filed the instant action in federal district court against Defendant GDNR. The United States is seeking a declaratory judgment that GDNR is wrongfully seeking to impose civil fines on the federal government and injunctive relief to prevent GDNR from enforcing or collecting these fines.

## II. DISCUSSION

### A. Cross Motions for Summary Judgment

■ The parties have filed cross motions for summary judgment on the issue of whether the Clean Air Act contains a waiver of sovereign immunity for civil fines of a punitive nature.

■ The United States government is subject to suit only to the extent to which it waives its sovereign immunity. *U.S. v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). Such a waiver must be "unequivocally expressed." *U.S. v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1951). *See also Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1991); *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983); *U.S. v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). Waivers of sovereign immunity will be strictly construed. *McMahon v. U.S.*, 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951).[8]

■ Generally, legislative history is used to place statutory language in its proper context. *Tidewater Oil Co. v. U.S.*, 409 U.S. 151, 158, 93 S.Ct. 408, 413, 34 L.Ed.2d 375 (1972). As noted, *supra*, however, any waiver of sovereign immunity must be unequivocally expressed to be effective. If legislative history is needed to determine the extent or existence of a waiver of sovereign immunity, the statutory text necessarily is ambiguous and the waiver of sovereign immunity has not been unequivocally expressed. Therefore, legislative history has no bearing on waivers of sovereign immunity. *U.S. v. Nor-*

*dic Village, Inc.*, 503 U.S. 30, 36, 112 S.Ct. 1011, 1016, 117 L.Ed.2d 181 (1992). Accordingly, this court need not examine legislative history in this situation.

### (1) The Clean Air Act

The court now turns its attention to the statutory language. The federal facilities provision of the Clean Air Act provides:

Each department, agency, and instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in the discharge of air pollutants, and each officer, agent, or employee thereof, **shall be subject to, and comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions** respecting the control and abatement of air pollution in the same manner, and to the same extent as any nongovernmental entity. The preceding sentence shall apply (A) to any requirement whether substantive or procedural (including any recordkeeping or reporting requirement, any requirement respecting permits and any other requirement whatsoever), (B) to any requirement to pay a fee or charge imposed by any State or local agency to defray the costs of its air pollution regulatory program, (C) to the exercise of any Federal, State, or local administrative authority, and (D) **to any process and sanction, whether enforced in Federal, State, or local courts, or in any other manner. This subsection shall apply notwithstanding any immunity of such agencies, officers, agents, or employees under any law or rule of law.** No officer, agent, or employee of the United States shall be personally liable for any civil penalty for which he is not otherwise liable.

42 U.S.C. § 7418(a) (Supp.1995) (emphases added).[9]

---

8. *But see Loeffler v. Frank*, 486 U.S. 549, 554, 108 S.Ct. 1965, 1969, 100 L.Ed.2d 549 (1988) (when the waiver of sovereign immunity is in the form of a "sue and be sued" clause, the waiver should be liberally construed).

9. The federal facilities provision of the Clean Water Act in relevant part provides:
   Each department, branch, agency, or instrumentality of the executive, legislative, and judicial branches of the Federal Government (1)

The citizen suit provision of the CAA provides:

Except as provided in subsection (b) of this section, any person may commence a civil action on his own behalf—

(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation. . . .

42 U.S.C. § 7604(a) (1983). Subsection (e) of this provision continues:

Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any emission standard or limitation or to seek any other relief (including relief against the Administrator or a State agency). Nothing in the section or in any other law of the United States shall be construed to prohibit, exclude, or restrict any State, local, or interstate authority from—

(1) bringing any enforcement action **or obtaining any judicial remedy or sanction in any State or local court,** or

(2) bringing any administrative enforcement action or obtaining any administrative remedy or sanction in any State or local administrative agency, department or instrumentality,

**against the United States,** any department, agency, or instrumentality thereof, or any officer, agent, or employee thereof under State or local law respecting control and abatement of air pollution. For provisions requiring compliance by the United States, departments, agencies, instrumentalities, officers, agents, and employees in

---

having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in the discharge or runoff of pollutants, and each officer, agent, or employee thereof in the performance of his official duties, *shall be subject to, and comply with,* **all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution** in the same manner, and to the same extent as any nongovernmental entity including the payment of reasonable service charges. The preceding sentence shall apply (A) to any requirement whether substantive or procedural (including any recordkeeping or reporting requirement, any requirement respecting permits and any other requirement whatsoever), (B) to the exercise of any Federal, State, or local administrative authority, and **(C) to any process and sanction, whether enforced in Federal, State, or local courts or in any other manner. This subsection shall apply notwithstanding any immunity of such agencies, officers, agents, or employees under any law or rule of law. . . .** No officer, agent, or employee of the United States shall be personally liable for any civil penalty arising from the performance of his official duties, for which he is not otherwise liable, and **the United States shall be liable only for those civil penalties arising under Federal law or imposed by a State or local court to enforce an order or the process of such court.**

33 *U.S.C.* § 1323(a) (1986) (emphases added).

The federal facilities provision of the Resource Conservation and Recovery Act in relevant part provides:

Each department, agency, and instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any solid waste management facility or disposal site, or (2) engaged in any activity resulting, or which may result, in the disposal or management of solid waste or hazardous waste **shall be subject to, and comply with, all Federal, State, interstate, and local requirements, both substantive and procedural (including any requirement for permits or reporting or any provisions for injunctive relief and such sanctions as may be imposed by a court to enforce such relief),** respecting control and abatement of solid waste or hazardous waste disposal in the same manner, and to the same extent, as any person is subject to such requirements, including the payment of reasonable service charges. **Neither the United States, nor any agent, employee, of officer thereof, shall be immune or exempt from any process or sanction of any State or Federal Court with respect to the enforcement of such injunctive relief.**

42 U.S.C. § 6961 (1983) (emphases added). The court notes that the 1992 amendment to § 6961, which provides that the "United States hereby expressly waives any immunity otherwise applicable to the United States with respect to any such substantive or procedural requirement," did not take effect until October 6, 1995. Since the alleged federal violations in the instant case occurred in 1994, *this amendment does not apply.*

the same manner as nongovernmental entities, **see section 7418 of this title.**

42 U.S.C. § 7604(e) (1983) (emphases added).[10]

### (2) Department of Energy v. Ohio: Clean Water Act and Resource Conservation and Recovery Act

In 1992, after the State of Ohio attempted to levy a civil fine against the United States for noncompliance with state environmental laws, the Supreme Court examined the Clean Water Act and the Resource Conservation and Recovery Act to determine the extent that these statutes waived the sovereign immunity of the United States. *Department of Energy v. Ohio,* 503 U.S. 607, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992). As explained, *infra,* the Court held that the waiver encompassed coercive but not punitive civil fines.

### CITIZEN SUIT PROVISION

The Court first examined Ohio's contention that the citizen suit provisions of the CWA and the RCRA waived the sovereign immunity of the federal government. *Id.,* 503 U.S. at 614–22, 112 S.Ct. at 1633–36. As an initial matter, the Court noted that, as neither statute defined "person" as encompassing the United States, the statutes' civil penalties sections were not applicable to the federal government. *Id.,* 503 U.S. at 616–20, 112 S.Ct. at 1634–35.

The Court next turned to the expanded definition of "person" in the citizen suit sections. *Id.,* 503 U.S. at 620, 112 S.Ct. at 1635. The citizen suit provisions of the CWA and

the RCRA apply to "any person, including the United States." *Id.* The Court reasoned that, when Congress intended for a new definition to apply to an entire section, Congress would use the phrase, "for the purposes of this section." *Id.* Since Congress did not use this language in the citizen suit provisions at issue, the Court held that the redefinition of "person" in these provisions was incomplete. *Id.* While the Court found that such a redefinition subjected the United States to suit and coercive fines, the Court held that it did not subject the federal government to the entire reach of the civil penalties sections, namely punitive fines. *Id.*

### FEDERAL FACILITIES PROVISION

The Court then turned to Ohio's argument that the federal facilities provisions of the RCRA and the CWA contained sufficient waivers of sovereign immunity such that punitive fines could be imposed on the United States. *Id.,* 503 U.S. at 620–30, 112 S.Ct. at 1636–40.

The Court first examined whether the use of "sanction" in the Clean Water Act indicated a congressional intent to subject the federal government to punitive as well as coercive fines. *Id.,* 503 U.S. at 620–24, 112 S.Ct. at 1636–37. As an initial matter, the Court noted that the meaning of "sanction" was "spacious" enough to encompass both punitive and coercive fines but that "use of the term carrie[d] no necessary implication" that punitive fines were included in its definition. *Id.,* 503 U.S. at 622, 112 S.Ct. at 1637. Noting, however, that the context in which the

---

**10.** The citizen suit provision of the Clean Water Act in pertinent part provides:

> any citizen may commence a civil action on his own behalf—
> > (1) against any person (including (i) the United States, ...) who is alleged to be in violation of (A) an effluent standard or (B) an order issued by the Administrator or a State with respect to such a standard or limitation....
>
> The district courts shall have jurisdiction ... to enforce such an effluent standard or limitation, or such an order ... as the case may be, and to apply any appropriate civil penalties under section 1319(d) of this title.

33 U.S.C. § 1365(a) (1986).

The citizen suit provision of the Resource Conservation and Recovery Act in relevant part provides:

> any person may commence a civil action on his own behalf—
> > (1)(A) against any person (including (a) the United States ...) who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter....
>
> The district court shall have jurisdiction ... to enforce the permit, standard, regulation, condition, requirement, prohibition, or order, referred to in paragraph (1)(A), ... and to apply any appropriate civil penalties under section 6928(a) and (g) of this title.

42 U.S.C. § 6972(a) (Supp.1995).

term was used could "supply a clarity that the term lacks in isolation," the Court focused on the pairing of "sanction" with "process." *Id.* Since "process" included the forward-looking enforcement of court orders rather than fines imposed for noncompliance with substantive requirements, the Court concluded that Congress was using "sanction" in its coercive sense only. *Id.*

The Court then evaluated the extent of the waiver in the following passage from the Clean Water Act: "the United States shall be liable only for those civil penalties arising under federal law or imposed by a State or local court to enforce an order or the process of this court." *Id.,* 503 U.S. at 622–28, 112 S.Ct. at 1637–39. The Court found that this sentence, though referring to "civil penalties" rather than "sanctions," served to clarify the "sanction" passage preceding it. *Id.,* 503 U.S. at 622, 112 S.Ct. at 1637. Noting that the penalties that could be imposed by state and local courts expressly were limited to those serving to enforce the orders of the court, the Court held that such state-imposed "civil penalties" included only equitable, coercive ones. *Id.,* 503 U.S. at 624, 112 S.Ct. at 1638. While that portion of the passage relating to "penalties arising under federal law" is not so modified and appears to encompass a broader reading of "civil penalties," the Court refused to find statutory authorization for punitive fines because the only source of authority for imposing such fines is the civil penalties section which, as discussed *supra,* does not apply to the federal government. *Id.* In addition, the Court found that coercive fines could be just as effective in forcing federal agency compliance with state environmental laws as punitive ones. *Id.*

As its final inquiry into the waiver of sovereign immunity issue, the Court examined that portion of the RCRA text which provided that the federal government "shall be subject to, and comply with, all Federal, State, interstate, and local requirements, both substantive and procedural (including any requirement for permits or reporting or

any provisions for injunctive relief and such sanctions as may be imposed by a court to enforce such relief)." *Id.,* 503 U.S. at 626–30, 112 S.Ct. at 1639–40. Since the parenthetical describes only substantive requirements and the equitable means of enforcement, the Court held that a reasonable interpretation of "all ... requirements" included coercive but not punitive measures. *Id.,* 503 U.S. at 626–30, 112 S.Ct. at 1639–40.

In the majority's final footnote, the Court rejected Ohio's argument that the amendments to the RCRA which overruled *Hancock v. Train,* 426 U.S. 167, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1976) [11] and subjected the federal government to state requirements indicates a congressional intent to waive sovereign immunity for all purposes. *Id.,* 503 U.S. at 628 n. 17, 112 S.Ct. at 1640 n. 17. The Court reasoned that Congress' intention to subject the United States to all substantive and procedural requirements does not indicate the scope of the enforcement mechanism. *Id.*

### (3) Early Lower Court Cases

Prior to the Supreme Court's 1992 exploration of the subject, several district courts had examined the waiver of sovereign immunity in the Clean Air Act. In *State of Alabama ex rel. Graddick v. Veterans Admin.,* 648 F.Supp. 1208, 1211 (M.D.Fla.1986), the district court found that a state could bring a compliance suit against the federal government and seek civil penalties because the federal facilities provision of the CAA had waived the sovereign immunity of the United States. The court pointed to the legislative history of the Act as well as the statutory language mandating that all federal agencies must comply with all state air pollution regulations notwithstanding any agency immunity. *Id.* In addition, the court pointed to Congress' 1977 amendments to the Clean Air Act which overruled *Hancock* as evidence of the intention to subject the federal government to all state requirements. *Id. See U.S. v. South Coast Air Quality Management District,* 748 F.Supp. 732, 738 (C.D.Cal.

---

**11.** In *Hancock v. Train,* the Supreme Court held that the 1970 version of the Clean Air Act did not impose state permit requirements on federal facilities. 426 U.S. 167, 198, 96 S.Ct. 2006, 2021, 48 L.Ed.2d 555 (1976).

1990) (the federal government must pay the fees and taxes assessed by the state agency because section 7418 of the Clean Air Act's expansive language has waived the sovereign immunity of the United States).

As the Supreme Court in *DOE* found that the "all … requirements" language of the Clean Water Act does not waive the United States' sovereign immunity for civil punitive fines, this court must conclude that the conclusions of the *Graddick* and *South Coast* cases based on an identical passage of the Clean Air Act are no longer valid. Nor do the courts' interpretations of the *Hancock* case remain viable after *DOE*. In addition, any reliance on the *Graddick* court's legislative history analysis would be misplaced in light of *Nordic Village, supra.*

In *State of Ohio ex rel. Celebrezze v. Department of the Air Force*, 1987 WL 110399, *7 (S.D.Ohio 1987), the district court held that fines and penalties could be assessed against the federal government for violations of the Clean Air Act because the federal facilities provision had waived the sovereign immunity of the United States. First, the court noted that the definition of "sanction" included both equitable and punitive remedies. *Id.* The court also found it important that the Clean Water Act and the Resource Conservation and Recovery Act had language clarifying "sanction" to include only equitable relief while the Clean Air Act lacked such clarification. *Id.* Finally, the court examined the legislative history of the Clean Air Act and concluded that Congress' intent was to waive sovereign immunity for both coercive and punitive fines. *Id.* at *4.

As the Supreme Court in *DOE* explicitly found that the word "sanction" carried no necessary implication of punitive fines, this court must reject the *Celebrezze* court's conclusion that "sanction" encompasses all penalties. Nor can this court rely on *Celebrezze*'s legislative history analysis in light of *Nordic Village, supra.* One portion of the *Celebrezze* court's opinion, however, remains untouched by subsequent Supreme Court precedent—the fact that the Clean Water Act and the Resource Conservation and Recovery Act contain equitable language that modifies "sanction" while the Clean Air Act

does not. This court will explore this open issue in the next section, *infra.*

#### (4) The Clean Air Act Revisited

In light of *DOE* and *Celebrezze,* this court must determine the extent that the Clean Air Act waives the United States' immunity to civil fines of a punitive nature.

### CITIZEN SUIT PROVISION

In *DOE,* the Supreme Court held that the incomplete incorporation of the civil penalty portions of the CWA and the RCRA into their respective citizen suit sections prevented the imposition of punitive civil fines on the United States. The citizen suit provision of the Clean Air Act, however, does not reference a civil penalty section and the rationale of the *DOE* opinion, therefore, is inapplicable to the instant inquiry. Instead, the citizen suit section of the CAA refers to section 7418, the federal facilities section. Any answer to the waiver of sovereign immunity issue must be found, therefore, in section 7418. Accordingly, this court holds that the citizen suit provision of the Clean Air Act does not express clearly a waiver of sovereign immunity to punitive civil fines. The waiver, if any, must be found in the federal facilities section of the Clean Air Act.

### FEDERAL FACILITIES PROVISION

The federal facilities provisions of the Clean Water Act and the Resource Conservation and Recovery Act are quite similar to that of the Clean Air Act. All of the acts refer to "process and sanctions." The acts subject the United States to all State environmental requirements. To the extent that the language of the Clean Air Act is similar to the CWA and the RCRA, this court adopts the rationale of the Supreme Court in *DOE*.

There are differences between the statutes, however. The Clean Water Act provides that the "United States shall be liable only for those civil penalties arising under Federal law or imposed by a State or local court to enforce an order or the process of such court." 33 U.S.C. § 1323(a). The Resource Conservation and Recovery Act provides that the federal government shall be

subject to all State requirements, "including any requirement for permits or reporting or any provisions for injunctive relief and such sanctions as may be imposed by a court to enforce such relief." 42 U.S.C. § 6961. The Clean Air Act has no such provisions regarding equitable relief.

The court must resolve the one issue of the *Celebrezze* case, *supra,* left open by *DOE*— whether the waiver of sovereign immunity in the Clean Air Act encompasses both coercive and punitive fines because the federal facilities section of the Clean Air Act does not have the clarifying, equitable language following the "process and sanction" provisions as found in the Clean Water Act and the RCRA. In *DOE,* the Supreme Court examined the "civil penalties" portion of the Clean Water Act after discussing the significance of the coupling of "sanction" with "process." 503 U.S. at 622, 112 S.Ct. at 1637. The opinion was structured in this way because the Court believed that the equitable passage served to "clarify or limit the waiver preceding it" rather than to stand alone as an independent portion. *Id.* As its analysis of the equitable passage progressed, the Court noted that the phrase "civil penalties arising under Federal law" was "problematical" as a modifier. *Id.,* 503 U.S. at 624, 112 S.Ct. at 1638. Indeed, the Court's ultimate conclusion about the "civil penalties" portion of the Clean Water Act was that the "expansive but uncertain waiver" was ambiguous and did not waive sovereign immunity for punitive fines. *Id.,* 503 U.S. at 626, 112 S.Ct. at 1639. Since the meaning of this additional portion of the Clean Water Act is less than certain, the fact that the Clean Air Act lacks such language could hardly serve to clarify the scope of the CAA.

In *DOE,* the Supreme Court also examined the "all ... requirements ... (including ... such sanctions imposed by a court to enforce such relief)" passage of the Resource Conservation and Recovery Act. *Id.* While the Court did note that the parenthetical description of coercive relief bolstered the conclusion that the passage provided only for equitable fines, *id.,* 503 U.S. at 628, 112 S.Ct. at 1640, the Court's focus instead was on the "all ... requirements" portion of the passage. Before addressing the import of the parenthetical modifier, the Court concluded that "all ... requirements" could "reasonably be interpreted as including ... the means for implementing such [substantive] standards, but excluding punitive measures." *Id.,* 503 U.S. at 626, 112 S.Ct. at 1639. It appears to this court, therefore, that the parenthetical included in the RCRA, while serving to clarify "all ... requirements," was not necessary to the Court's conclusion that only equitable fines were authorized. Accordingly, the "all ... requirements" passage in the Clean Air Act does not need the additional language included in the RCRA to clarify that only equitable, coercive fines are permitted.

Since the only clearly expressed waiver of sovereign immunity in the Clean Air Act is for coercive fines, this court finds that punitive fines may not be imposed on the federal government thereunder. Plaintiff's motion for summary judgment is GRANTED. Defendant's motion for summary judgment is DENIED.

### B. *Motion to Strike*

■ While motions to strike are generally disfavored when the objection is that the pleadings are immaterial, irrelevant, insufficient, and redundant, *Augustus v. Board of Public Instruction of Escambia County, Fla.,* 306 F.2d 862, 868 (5th Cir.1962); *Beiswenger Enter. Corp. v. Carletta,* 779 F.Supp. 160, 160 (M.D.Fla.1991), such is not the basis for Plaintiff's motion in the instant case. In its reply brief, Defendant points to instances where the federal government has complied with state civil penalties and Plaintiff has moved this court to strike these examples as they were not raised in Defendant's original motion for summary judgment.

■ This court will not consider arguments raised for the first time in a reply brief. *See U.S. v. Oakley,* 744 F.2d 1553, 1556 (11th Cir.1984); *U.S. v. Benz,* 740 F.2d 903, 916 (11th Cir.1984), *cert. denied,* 474 U.S. 817, 106 S.Ct. 62, 88 L.Ed.2d 51 (1985). Since Defendant did not include the examples of federal compliance with state-imposed punitive fines for environmental violations, Plaintiff's motion to strike is GRANTED.

## 1472

### III.  CONCLUSION

Plaintiff's motion for summary judgment [8–1] is GRANTED.  Defendants' motion for summary judgment [9–1] is DENIED. Plaintiff's motion to strike a portion of Defendant's reply brief [12–1] is GRANTED.

SO ORDERED.