UNITED STATES of America, Plaintiff,

v.

SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT; James M. Lents, in his official capacity as Executive Officer, South Coast Air Quality Management District, Defendants.

PEOPLE OF THE STATE OF CALIFORNIA EX REL. SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT, Counterclaimant,

v.

UNITED STATES of America, et al., Counterdefendants.

State of California, Defendant and Counterclaimant in Intervention.

No. CV 89–0548 WJR(Sx).

United States District Court,
C.D. California.

Oct. 16, 1990.

Ian Fan, Asst. U.S. Atty., Civ. Div., Los Angeles, Cal., Richard B. Stewart, Asst. Atty. Gen., Environment and Natural Resources Div., Thomas R. Lotterman, Richard A. Correa, Trial Attys., U.S. Dept. of Justice, Washington, D.C., for plaintiff/counterdefendants.

Mark I. Weinberger, Alletta d'A. Belin, Shute, Mihaly & Weinberger, San Francisco, Cal., Peter Greenwald, Dist. Counsel, Barbara Baird, Sr. Deputy Dist. Counsel, Robert N. Kwong, Deputy Dist. Counsel, South Coast Air Quality Management Dist.,

El Monte, Cal., Daniel P. Selmi, Los Angeles, Cal., for defendants and counterclaimant.

John K. Van de Kamp, Atty. Gen., State of Cal., R.H. Connett, Asst. Atty. Gen., Susan Fiering, Michael W. Neville, Deputy Attys. Gen., San Francisco, Cal., for defendant and counterclaimant in intervention.

## MEMORANDUM DECISION AND ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT

REA, District Judge.

The Court has reviewed and considered the moving and opposing papers, the record of the case, the arguments of counsel, the applicable authorities and good cause appearing therefor:

IT IS HEREBY ORDERED that the defendants' and counterclaimant's motion for summary judgment is GRANTED. The United States' motion for partial summary judgment is DENIED.

█ The issue before the Court is whether section 118 of the Clean Air Act ("the CAA" or "the Act") contains a clear and unambiguous waiver of sovereign immunity with respect to federal facilities' obligation to pay certain fees imposed pursuant to the South Coast Air Quality Management District's rules and regulations.

Consistent with the rationale expressed in *Hancock v. Train*, 426 U.S. 167, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1976), the Court concludes that the language of section 118 clearly and unambiguously waives sovereign immunity, thereby obligating federal facilities to pay the contested fees.

### Procedural Background

Federal military installations filed this action in January, 1989, alleging that certain fees required by the South Coast Air Quality Management District ("the District") constituted illegal taxes in violation of the Supremacy Clause, article VI, clause 2, of the United States Constitution.[1]  The

1. The United States asserts the following grounds for its claims of unconstitutionality: (1) the fees are not calculated on the basis of the

cost of services provided to the United States; (2) the fees are designed to produce revenue in excess of the cost of services provided to the

United States is seeking declaratory and injunctive relief, as well as a refund of all of the protested environmental fees paid by all federal facilities in the District for six years prior to the date the complaint was filed.

In its answer to the complaint, the District denies that the fees were unconstitutional and has filed a counterclaim seeking payment of all unpaid fees, late payments owed by federal facilities, and civil penalties.

The State Air Resources Control Board has intervened as a defendant and counterclaimant supporting the position taken by the District.

Discovery is complete. The parties have entered into a stipulation to bifurcate the issues of liability and damages. Pursuant to that stipulation, the present motions for summary judgment bear only upon the issue of liability. The parties agreed at the October 1, 1990 hearing that the issue of the availability of civil penalties should be decided at a later time pursuant to a briefing schedule stipulated to by the parties.

The United States has moved for partial summary judgment on the ground that the District's imposition of fees on the United States, while exempting state and local governmental agencies from the same fees, discriminates against the United States in violation of the Constitution. The United States is seeking a refund of the discriminatory fees [2] that it has paid from 1983 to 1989.[3]

The District has moved for summary judgment on all of the United States' claims. Additionally, the District is moving for summary judgment on its counterclaims for declaratory and injunctive relief. The District's position is that section 118 of the CAA provides a clear and unambiguous waiver of sovereign immunity. Hence, the federal facilities are obligated to pay the assessed fees.

## The Clean Air Act/District Regulations in Dispute

The Clean Air Act provides the basic framework for federal air pollution control. 42 U.S.C. §§ 7401–7642. The Act calls for a joint federal-state effort to combat air pollution. 42 U.S.C. §§ 7401, 7407.

The states have primary responsibility for implementation of air pollution standards for ambient air quality and emission standards subject to Environmental Protection Agency ("EPA") oversight and approval. See 42 U.S.C. §§ 7401(a), 7407, 7410, 7413. The CAA requires states to develop plans (State Implementation Plans or "SIPS") and to adopt and enforce regulatory programs to attain and maintain federal air quality standards. 42 U.S.C. §§ 7410, 7411, 7412. The EPA has authority to act for the states and to impose sanctions if a state is not fulfilling the mandates of the Act. 42 U.S.C. §§ 7413(a), 7410(c). Additionally, the CAA allows states to adopt and enforce their own air pollution control programs, provided that they are no less stringent than those required by the Act. 42 U.S.C. § 7416.

In California, primary control of stationary source emissions is vested in the forty-one air pollution control districts in the state. Cal.Health & Safety Code §§ 39002, 40000. The State Air Resources Board has promulgated ambient air quality standards for each of the air basins throughout the state. The air pollution control districts develop and adopt the required elements of the State Implementation Plan within their jurisdiction. These districts adopt and enforce permitting and emissions limitations and rules to achieve and maintain both state and federal ambient air quality standards. Cal.Health & Safety Code § 42300.

The South Coast Air Quality Management District is the agency responsible for

United States; and (3) by exempting state, county, city, district, and other political subdivisions from the imposition of the fees, the District discriminated against the United States.

2. The United States is only challenging the permit application fees, the annual operating permit fees, and the annual emissions fees in this motion for partial summary judgment.

3. In 1989, the District began requiring state and local facilities to pay these fees. See Cal.Health & Safety Code § 40510 (West Supp.1990).

management of air quality in the South Coast Air Basin. Cal.Health & Safety Code § 40410. The District includes all of Orange County and the non-desert portions of Los Angeles, Riverside, and San Bernadino counties. Cal.Health & Safety Code § 40410. The South Coast Air Basin has the worst air quality problem in the nation. Cal.Health & Safety Code § 40402(b); SCAQMD Exhibit 1, p.i. While the District has a plan in place, approved by the EPA, the Basin still fails to meet the federal air quality standards for four of the six federally regulated pollutants. SCAQMD Exhibit 1, p.i.

State law authorizes districts to establish fee schedules for the issuance, evaluation, and renewal of permits to cover the cost of the district programs related to the permitted sources to the extent that those costs are not otherwise funded. Cal.Health & Safety Code § 42311(a). Fee revenues may not exceed actual district program costs, and fees in excess of those costs collected by the districts must be carried over to the next fiscal year and the fee schedule adjusted accordingly. Cal.Health & Safety Code § 42311(a).

The District's rules and regulations, adopted pursuant to California Health & Safety Code sections 40440 and 40510, establishing the fee schedules challenged in this case are found in rules 301, 301.1, and 301.2. The United States' motion for summary judgment challenges three fees that, prior to amendments adopted by the District on May 24, 1990, were called filing fees, application evaluation fees, and annual operating permit fees.[4] The fees at issue were assessed in the following manner: (1) the filing fees were imposed at the time of filing applications for permits to operate equipment that may cause air pollution; (2) the application evaluation fees were imposed for evaluating those applications; (3) one part of the annual operating permit fee was imposed for issuing or renewing annual operating permits; and (4) the other part of the annual permit fee, called the annual

emissions fee, was imposed for issuing annual permits based on total emissions.

## DISCUSSION

### I. The Defendants' and Counterclaimant's Motion for Summary Judgment

#### A. Whether Section 118 of the CAA is a Clear and Unambiguous Waiver of Sovereign Immunity

The District's motion for summary judgment is based on the argument that section 118 of the Clean Air Act waives sovereign immunity with respect to all aspects of the District's air pollution control program, including the air pollution regulatory fees challenged by the United States. The United States urges the Court to adopt a limited construction of the waiver of sovereign immunity found in section 118. The Court begins its analysis with a review of section 118.

#### 1. Section 118 of the Clean Air Act

Section 118 of the Clean Air Act requires federal entities to comply with the Act in the following manner:

> Each department, agency, and instrumentality of the executive, legislative, and judicial branches of the Federal Government ... shall be subject to, and comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of air pollution in the same manner, and to the same extent as any nongovernmental entity. The preceding sentence shall apply (A) to any requirement whether substantive or procedural (including any recordkeeping or reporting requirement, any requirement respecting permits and any other requirement whatsoever), (B) to the exercise of any Federal, State, or local administrative authority, and (C) to any process and sanction, whether enforced in Federal, State, or local courts or in any other manner. This subsection shall apply notwithstanding any immunity of such agencies, officers, agents, or employees under any law or rule of law.

---

4. Since the May 24, 1990 amendments, the filing fees and application evaluation fees have been combined into a single fee called a permit processing fee.

No officer, agent, or employee of the United States shall be personally liable for any civil penalty for which he is not otherwise liable.

42 U.S.C. § 7418(a). Section 118 also provides that the President may exempt any federal entity from compliance with the Act upon a determination that such an exemption is in the best interest of the United States. 42 U.S.C. § 7418(b).

### 2. *History of Section 118 of the Clean Air Act*

When the Clean Air Act was first passed in 1963, the Act required federal facilities to cooperate with air pollution control agencies when practicable and in the interests of the United States. Clean Air Act of 1963, Pub.L. No. 88–206, § 7, 77 Stat. 392, 399 (1963) (amended 1970).[5]

In 1970, the Act was amended to add section 118 which required federal facilities to "comply with Federal, State, interstate, and local requirements respecting control and abatement of air pollution to the same extent that any person is subject to such requirements." 42 U.S.C. § 1857f, *as amended by* 42 U.S.C. § 7418 (1977). According to the legislative history, Congress departed from its policy of voluntary compliance because of federal agencies' failure to comply with air pollution standards. *See* S.Rep. No. 1196, 91st Cong., 2d Sess. 23, 37 (1970); H.R.Rep. No. 1146, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News 5356–74.

The scope of the 1970 version of section 118 was tested in *Hancock v. Train*, 426 U.S. 167, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1976). The issue in *Hancock* was whether obtaining a permit to operate was among the requirements with which the federal facilities had to comply under section 118 of the CAA. The Court stated that there was no doubt that federal facilities had to comply with air pollution control and abatement measures, but that a question remained regarding the state's ability to enforce federal compliance with those mea-

sures. *Id.* at 172, 96 S.Ct. at 2009. Kentucky, like other states, implemented an enforcement procedure through the use of permits. Officials for various federal facilities located in Kentucky refused to comply with the permitting procedure. *Id.* at 174, 96 S.Ct. at 2010. The Environmental Protection Agency took the position that the federal agencies were not required to apply for state operating permits although these facilities were required to meet the state air quality standards and emissions limitations. *Id.* at 175, 96 S.Ct. at 2011. Kentucky brought an action to enforce compliance with the permitting procedure. The district court dismissed the complaint on a motion for summary judgment holding that federal facilities need not comply with the permitting procedure. The court of appeals affirmed. Because of a conflict between the districts regarding the interpretation of section 118, the Supreme Court granted certiorari and affirmed. *Id.* at 177, 96 S.Ct. at 2011.

In interpreting the scope of section 118, the Court set out the controlling standards for construing statutes involving the issue of whether Congress has granted a waiver of sovereign immunity. *Id.* at 178–80, 96 S.Ct. at 2012–13. The Court recited the principle that absent an affirmative declaration by Congress that its instrumentalities or property are subject to regulation, sovereign immunity prevails. *Id.* at 179, 96 S.Ct. at 2012. In evaluating whether section 118 contained an unambiguous waiver of sovereign immunity, the Court stated the following:

Analysis must begin with § 118. Although the language of this provision is notable for what it states in comparison with its predecessor, it is also notable for what it does not state. It does not provide that federal installations "shall comply with all federal, state, interstate, and local requirements to the same extent as any other person." Nor does it state that federal installations "shall comply

---

**5.** This language was derived from the 1959 version of the statute regulating air pollution. Air Pollution Control Act of 1959, Pub.L. No. 86–365, § 2, 73 Stat. 646 (1959) (amended 1963).

Prior to 1959, there was no provision requiring federal compliance. Air Pollution Control Act of 1955, Pub.L. No. 84–159, 69 Stat. 322 (1955) (amended 1959).

with all requirements of the applicable state implementation plan." Section 118 states only to what extent—the same as any person—federal installations must comply with applicable state requirements; it does not identify the applicable requirements.

*Id.* at 182, 96 S.Ct. at 2014 (footnotes omitted; emphasis in original).

The Court went on to find that the section's failure to differentiate between procedural and substantive requirements created ambiguity. The Court extensively reviewed the legislative history, as well as other sections of the Clean Air Act. Finally, the Court concluded that section 118 did not contain a waiver of sovereign immunity regarding compliance with Kentucky's permitting procedure.

> In view of the undoubted congressional awareness of the requirement of clear language to bind the United States, our conclusion that with respect to subjecting federal installations to state permit requirements, the Clean Air Act does not satisfy the traditional requirement that such intention be evinced with satisfactory clarity. Should this nevertheless be the desire of Congress, it need only amend the Act to make its intention manifest. Absent such amendment, we can only conclude that to the extent it considered the matter in enacting § 118 Congress has fashioned a compromise which, while requiring federal installations to abate their pollution to the same extent as any other air contaminant source and under standards which the States have prescribed, stopped short of subjecting federal installations to state control.

*Id.* at 198–99, 96 S.Ct. at 2021–22 (footnotes omitted).

It should be noted that the same day that *Hancock* was decided, the Court also interpreted a section of the Clean Water Act containing virtually identical language regarding the duty of the federal government to comply with state requirements. *EPA v. California ex rel. State Water Resources Control Board,* 426 U.S. 200, 96 S.Ct. 2022, 48 L.Ed.2d 578 (1976). There, the Court had even stronger reasons to reject the argument that Congress had waived sovereign immunity with respect to the state permitting procedure given the EPA's "more prominent role", in relation to the states, in implementing the Clean Water Act. *Id.* at 214, 96 S.Ct. at 2029. The EPA had specifically interpreted the relevant section of the Clean Water Act as excluding federal facilities from compliance with the state permits. The Court found that the administrative agency's—the EPA's—interpretation of the section was reasonable, and hence, given considerable deference. The Court held that there was no evidence of contrary congressional intent. *Id.* at 227, 96 S.Ct. at 2035.

### 3. Whether Congress has Waived Sovereign Immunity

■ The appropriate standard to evaluate whether section 118 subjects the federal government to fees or taxes is the requirement of a "clear and unambiguous" expression of congressional intent to waive immunity. *Hancock v. Train,* 426 U.S. 167, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1976).[6] "Because of the fundamental importance of the principles shielding federal installations from regulation by the States, an authorization of state regulation is found only when and to the extent there is a 'clear congressional mandate,' 'specific congressional action' that makes this authorization of state regulation 'clear and unambiguous.' " *Id.* at 179, 96 S.Ct. at 2012 (footnotes omitted). In articulating this standard, the Court relied on landmark cases interpreting the scope of the Supremacy Clause, including, *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819); *Johnson v. Maryland,* 254 U.S. 51, 57, 41 S.Ct. 16, 17, 65 L.Ed. 126 (1920); *Mayo v. United States,* 319 U.S. 441, 63 S.Ct. 1137, 87 L.Ed. 1504 (1943).

#### a. Language of the Statute

The first step in the Court's inquiry is to analyze the language of section 118.

---

**6.** The District, relying on *United States v. New Mexico,* 455 U.S. 720, 735–36, 102 S.Ct. 1373, 1383, 71 L.Ed.2d 580 (1982), attempts to argue that the Court should adopt a narrow interpretation of immunity; however, given *Hancock,* the clear and unambiguous standard is controlling.

"[I]n the absence of 'clearly expressed legislative intention to the contrary,' the language of the statute itself 'must ordinarily be regarded as conclusive.'" Unless exceptional circumstances dictate otherwise, "[w]hen we find the terms of a statute unambiguous, judicial inquiry is complete."

*Burlington Northern Railroad Co. v. Oklahoma Tax Commission,* 481 U.S. 454, 461, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987) (citations omitted).

The language of section 118 is broad. Words highlighting the breadth of the section include "all"; "any"; "any requirements whatsoever"; and "this subsection shall apply notwithstanding any immunity ... under any law or rule of law". 42 U.S.C. § 7418(a). The plain language of the statute reveals its expansiveness. In contrast to the language interpreted in *Hancock,* section 118 as amended in 1977 includes the words "all" and "any" which the *Hancock* court noted were missing from the 1970 version of section 118 of the Act. 426 U.S. at 182, 96 S.Ct. at 2014.

■ Based on the language of section 118, the Court concludes that the language of the statute clearly and unambiguously waives sovereign immunity. "[T]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafter.'" *United States v. Ron Pair Enterprises,* 489 U.S. 235, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989).

b. Whether "fees" and "taxes" are "requirements"

■ The United States argues that section 118 is ambiguous because it does not specifically list fees and taxes as requirements with which the federal facilities must comply. The United States notes that neither section 118 nor the legislative history of the section mention the terms "taxes" or "fees". Thus, the United States concludes, the statute fails to provide a clear and unambiguous waiver of the payment of taxes or fees.

The problem with the United States' argument is that it fails to consider the all-inclusive language of the statute. There are two ways Congress could express its intent to waive sovereign immunity. One, Congress could specifically list those categories which it wished to include. Two, Congress could provide a broad waiver. There is no requirement that Congress express its waiver by means of a list approach. The language of section 118 indicates that it was Congress' intent to grant a broad waiver of sovereign immunity. Given this inclusive language, the assumption would be that Congress intended a waiver of all immunity absent any exclusions.

Next, the United States argues that a fee or tax is not a requirement. The United States points to other environmental statutes where the terms "fees" and "taxes" were specifically enumerated next to the term "requirements". *See e.g.,* Low–Level Radioactive Waste Policy Act, 42 U.S.C. §§ 2021b–2021j. Additionally, the United States argues that two other environmental statutes include a waiver for the assessment of "reasonable service charges". Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901–6992k; Clean Water Act ("CWA"), 33 U.S.C. §§ 1251–1387. The United States also relies on specific waivers contained in several nonenvironmental statutes. The government then concludes that absent the use of the words fees or taxes, the Court would have to imply that fees and taxes are requirements. The government argues that this reasoning was specifically rejected in *Hancock.*

The District points out that the statutes the government relies upon to limit the definition of requirement, CWA and RCRA, mandate federal compliance with "all requirements ... including payment of reasonable service charges." 42 U.S.C. § 6961; 33 U.S.C. § 1323. The District concludes that these statutes evince the congressional understanding that the term "requirements" includes fee requirements.

The United States' interpretation would frustrate the intent of Congress. In response to the *Hancock* case, Congress

amended section 118 to overrule *Hancock.*[7] The replete emphasis and use of the words "any" and "all" in section 118 would appear to be in response to language in *Hancock* where the Court emphasized the fact that the 1970 version of section 118 did not include the word "all". 426 U.S. at 182, 96 S.Ct. at 2014. The Court concludes that section 118 contains a clear and unambiguous waiver of sovereign immunity. The federal facilities are subject to the District imposed fees.

### B. Whether section 118 is limited by section 110

■ The United States argues that even if the term "requirements" in section 118 included "fees", the state and local governments would be limited by section 110 of the CAA in the amount of fees that they could assess federal facilities. Section 110 provides that a state implementation plan must:

> require[ ] the owner or operator of each major stationary source to pay to the permitting authority as a condition of any permit ... a fee sufficient to cover— (i) the reasonable costs of reviewing and acting upon any application for ... a permit, and (ii) ... the reasonable costs (incurred after [August 7, 1977]) of implementing and enforcing the terms and conditions of any such permit (not including any court costs or other costs associated with any enforcement action).

42 U.S.C. § 7410(a)(2)(K). The government concludes that the annual emissions fee and annual operating fee are unconstitutional because they fall outside of the permissible fee categories allowed by section 110. The government charges that the annual emissions fee is impermissible because it is really a tax. The purpose of the emissions fee is to provide an economic incentive for permittees to reduce their pollution.

The District points out that section 110(a)(2)(K) is a minimum fee requirement and places no maximum limit on the fees that may be required. Section 110 requires the owners or operators of major stationary sources to pay fees sufficient to cover the costs of reviewing and acting upon permit applications and the costs of implementing and enforcing permits. 42 U.S.C. § 7410(a)(2)(K). The EPA has approved stricter fee requirements as permissible under the CAA. *See* 49 Fed.Reg. 13175 (April 3, 1984) ("Section 116 however, requires EPA to approve any stricter measures that a State chooses to impose.").

The Court concludes that section 118 is not limited by section 110 of the Clean Air Act. The Act specifically contemplates states implementing their own air pollution abatement programs. The EPA has concluded that stricter fees are permissible, and such determinations should be given deference.

### C. Whether section 118 allows state or local government to abuse its power to tax the United States without legal recourse

■ The government claims that if the Court interprets section 118 as providing for an absolute waiver of sovereign immunity, the United States will have no recourse from taxes or fees that are discriminatory, excessive or improper. The United States asserts that the United States is not afforded protection under the Fifth or Fourteenth Amendments because the United States is not a "person" protected by these laws.[8] Further, the United States appears to question the ability of a state court to assess the reasonableness of a state imposed tax because of bias.

---

7. "The new section 113 [42 U.S.C. section 7418] is intended to overturn the Hancock case and to express, with sufficient clarity, the committee's desire to subject Federal facilities to all Federal, State, and local requirements—procedural, substantive, or otherwise—process, and sanctions." H.R.Rep. No. 294, 95th Cong., 1st Sess. 199, *reprinted in* 1977 U.S.Code Cong. & Admin. News 1077, 1278.

8. The United States relies on *United States v. City of Jackson, Mississippi,* 318 F.2d 1, 8 (5th Cir.1963); *Pennsylvania v. New Jersey,* 426 U.S. 660, 665, 96 S.Ct. 2333, 2336, 49 L.Ed.2d 124 (1976); *South Carolina v. Katzenbach,* 383 U.S. 301, 323–24, 86 S.Ct. 803, 816, 15 L.Ed.2d 769 (1966) to support this conclusion.

The District responds by stating that the federal government has the same remedies as those available to private parties. The District asserts that the government is protected from unlawful discrimination. If the government can show that a tax would be illegal as applied to a private party, then such tax or fee would be illegal as applied to the United States. Furthermore, the government has the added protection of section 118(b) which provides that the President can exempt federal facilities from compliance with any requirement of the Act when appropriate.

The United States has failed to demonstrate that it is without legal recourse. It must be presumed that Congress considered the risks involved with the United States pressing claims in state courts when it waived sovereign immunity.

### D. Conclusion

The Court concludes that section 118 of the Clean Air Act contains a clear and unambiguous waiver of sovereign immunity with respect to federal facilities' obligation to pay fees imposed pursuant to the South Coast Air Quality Management District's rules and regulations. The Court's inquiry begins and ends with the language of section 118 as it contains an unambiguous expression of congressional intent. No exceptional circumstances exist which would compel the Court to stray from a literal application of the statute. Therefore, the Court grants defendants' and counterclaimant's motion for summary judgment. The federal facilities are obligated to pay the contested fees.

### II. *The United States' Motion for Partial Summary Judgment*

■ The United States motion for partial summary judgment is based on the fact that prior to January 6, 1989, District rule 301(a) exempted local and state government agencies and public districts from paying any fees, except for the application evaluation fee. The United States argues that such discrimination between federal and state governmental entities is unconstitutional.

Prior to the January 6, 1989 amendment, rule 301(a) provided in part:

All applicants and permittees, including federal, state or local governmental agencies or public districts shall pay the above fees to the extent allowed under Chapter 2, Division 7 Title 1 of the Government Code (commencing with Section 6103) and Chapter 55, Part 3, Division 26 of the Health and Safety Code (commencing with Section 40500). This shall be interpreted to mean that all federal agencies and all public utilities, such as electrical power utilities, shall pay all fees. All other state or local governmental agencies or public districts shall pay permit evaluation fees only.

United States Exhibit 2. California Government Code section 6103 exempts state and local entities from compliance with fee requirements. Health and Safety Code section 40510 was amended in 1988 to provide that, "Every person applying for a variance or a permit, notwithstanding Section 6103 of the Government Code, shall pay the fees required by the schedule." Health and Safety Code § 40510, amended by Stats.1988, c. 1568, § 8.2 (West Supp. 1990). The District's rule 301(a) was subsequently amended in January, 1989 to end the fee exemption for state and local governmental agencies and public districts.

Section 118 provides that the federal facilities must comply with all requirements "respecting the control and abatement of air pollution ... to the same extent as any nongovernmental entity." 42 U.S.C. § 7418(a). The United States argues that the reference to "any nongovernmental entity", read in the context of the sentence, clearly means any "nonfederal governmental" entity.

Once again, the plain language of the statute does not support such construction. On the one hand, the United States argues that if a word, for example "fee", is not specifically included, it is excluded from the statute. Then, the United States urges the Court to imply the word "federal" into the term "nongovernmental". If Congress intended the federal government to comply with the Clean Air Act to the same extent

as any state or local governmental entity, the use of the term "nongovernmental" would not be the clearest way to express such intent. Conversely, the term "nongovernmental" would appear to be very descriptive of congressional intent to have the federal government comply with the Act to the same extent as any private entity. There is no allegation that the District treats the federal government and private entities in a discriminatory manner.

The United States argues that even if Congress waived sovereign immunity with respect to fees, it has not and cannot waive sovereign immunity as to a discriminatory tax. *Massachusetts v. United States,* 435 U.S. 444, 466–67, 98 S.Ct. 1153, 1167, 55 L.Ed.2d 403 (1978) outlines a three part test to determine whether a fee imposed by the federal government upon a state government constitutes an unconstitutional tax or a nondiscriminatory revenue measure. The United States relies on *Davis v. Michigan Department of Treasury,* 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989) to support its position that a tax cannot discriminate between state and federal governments.

The Court finds that *Massachusetts* and *Davis* are distinguishable. In *Massachusetts,* the Court was deciding whether the federal government could impose a fee on an aircraft owned by the state given the implied immunity of a state government from federal taxation. The Court held that a state enjoyed no constitutional immunity from a nondiscriminatory revenue measure. *Massachusetts,* 435 U.S. at 455, 98 S.Ct. at 1161. "The immunity of the Federal Government from state taxation is bottomed on the Supremacy Clause, but the States' immunity from federal taxes was judicially implied from the States' role in the constitutional scheme." *Id.* at 455, 98 S.Ct. at 1161. The Court found that a nondiscriminatory revenue measure could not offend the doctrine of state tax immunity as long as "the charges do not discriminate against state functions, are based on a fair approximation of use of the system, and are structured to produce revenues that will not exceed the total cost to the

Federal Government of the benefits to be supplied." *Id.* at 466–67, 98 S.Ct. at 1167.

The *Massachusetts* Court was determining whether a fee could ever be imposed on one sovereign by another sovereign absent a waiver of sovereign immunity. Thus, this three part analysis has no application if one sovereign consents to the application of a fee by another sovereign.

The statute interpreted in *Davis,* 4 U.S.C. section 111, specifically limited the waiver of sovereign immunity to state taxation when "the taxation does not discriminate against the officer or employee because of the source of the pay or compensation." 109 S.Ct. at 1504. The Court held that 4 U.S.C. section 111, providing the limited waiver of sovereign immunity, should be construed as codifying the judicially defined concept of intergovernmental immunity. *Id.* at 1506. The *Davis* Court found that a state tax that exempted retirement benefits of retired state employees, while taxing the benefits received by retired federal employees, was unconstitutional. *Id.* at 1508.

It is important to note that *Davis* did not hold that the constitutional doctrine of intergovernmental immunity prohibits an express waiver by Congress of sovereign immunity that could result in disparate treatment between the federal and state governmental entities. Rather, *Davis* was interpreting the case precedent defining the scope of sovereign immunity absent a congressional waiver, and section 111 that expressly limited the waiver of sovereign immunity to nondiscriminatory taxation. *Davis* recognized that Congress determines the scope of the waiver. *See* 109 S.Ct. at 1504–06.

Congress has defined the scope of the waiver of sovereign immunity in section 118 of the Clean Air Act. The constitutional doctrines expressed in *Massachusetts* and *Davis* do not limit the extent to which Congress can waive sovereign immunity. Congress has consented to the imposition of state assessed fees to implement the Clean Air Act. Because section 118 provides a complete waiver of sovereign immu-

nity, the Court denies the United States' motion for partial summary judgment.