UNITED STATES of America,

v.

**TENNESSEE AIR POLLUTION CONTROL BOARD.**

No. 3:96–0276.

United States District Court, M.D. Tennessee, Nashville Division.

April 9, 1997.

---

William Lee Deneke, Office of U.S. Attorney, Nashville, TN, Naikang Tsao, Dept. of Justice, Environmental Defense Section, Washington, DC, for Plaintiff.

Barry Turner, Office of Attorney General of State of Tenn., Environmental Div., Nashville, TN, for Defendant.

## MEMORANDUM:

NIXON, Chief Judge.

Pending before this Court is Plaintiff United States of America's Motion for Summary Judgment (Doc. No. 7) and Defendants' Cross–Motion for Summary Judgment (Doc. No. 10).

For the reasons stated below, the Court hereby grants Defendant Tennessee Air Pollution Control Board's Cross–Motion for Summary Judgment and denies Plaintiff United States of America's Motion.

## I. INTRODUCTION:

The Clean Air Act (CAA), 42 U.S.C. §§ 7401–7671q (1994), was enacted to protect and improve the United States' air quality, and was one of the first environmental statutes promulgated by Congress. It was initially enacted in 1963 and significantly amended in 1970, 1977 and again in 1990. In drafting the Clean Air Act, Congress envisioned a significant role for the states in controlling and preventing air pollution both within and across their borders. *See* 42 U.S.C. §§ 7401(c), 7402(a), 7407(a) (1994).

Section 118(a) of the CAA subjects federal facilities to state regulations. 42 U.S.C. § 7418(a) (1994). The language in section 118 requires federal facilities to comply with the substantive and procedural requirements of the CAA. Additionally, section 304 of the CAA, the citizen suit provision of the statute, authorizes "any person" (defined to include individual states at 42 U.S.C. § 7602[e] ) to commence a civil action "against any person (including (i) the United States)" for violations of the Act. 42 U.S.C. § 7604(a)(1) (1994). At issue in the present litigation is whether the language of section 118 and section 304 clearly waive sovereign immunity

with respect to punitive civil penalties imposed to force federal facilities to comply with state standards.

## II. BACKGROUND AND PROCEDURAL HISTORY:

On December 8, 1992, the Technical Secretary of the Tennessee Air Pollution Control Board (TAPCB) issued a Notice of Violation to the United States Army, seeking civil penalties against the Army for violations of the Tennessee Air Quality Act, T.C.A. §§ 68–201–101—68–201–203, at the Milan Army Ammunition Plant in Milan, Tennessee.

On August 20, 1993, the Technical Secretary of the TAPCB issued an order, assessing a civil penalty of $2500 against the Army, based on the Army's failure to provide written notice of its intent to remove approximately 330 linear feet of pipe insulated with asbestos containing material, in violation of the Tennessee Department of Environment and Conservation's Division of Air Pollution and Control's Division Rule 1200–3–11–.02(2)(d)2, and the Army's failure to comply with the State's asbestos handling requirements, in violation of Division Rules 1200–3–11–.02(2)(d)4(iii) and (v).

The Army filed a notice of appeal with the TAPCB, asserting that the CAA does not waive the United States' sovereign immunity from state law punitive civil penalties. A hearing before the TAPCB was subsequently scheduled for September 13–14, 1995.

On August 18, 1995, the TAPCB requested the parties to brief the sovereign immunity issue. On September 29, 1995, the Army filed its brief, seeking to dismiss the Technical Secretary's assessment of a civil penalty, arguing that Congress has not waived the United States' sovereign immunity from state-imposed civil penalties under CAA section 118(a), 42 U.S.C. § 7418(a).

On January 26, 1996, Administrative Law Judge Marion P. Wall (ALJ) rejected the Army's assertion of sovereign immunity and held that CAA section 118(a) waived the United States' immunity from state law civil penalties.

The TAPCB issued its Final Decision and Order on February 14, 1996, denying the Army's appeal of the Technical Secretary's August 20, 1993 Order, and instructing the Army to pay the $2500 civil penalty. The TAPCB also issued a second Order, pursuant to T.C.A. § 4–5–316, agreeing to stay the enforcement of the civil penalty until all judicial appeals and/or other judicial remedies were exhausted.

The Army concedes that under CAA section 118(a), 42 U.S.C. § 7418(a), it is required to comply with the requirements of the Tennessee Air Quality Act, T.C.A. §§ 68–201–101 to –203 and the rules and regulations promulgated thereunder, and that it may be sued in state court or in a state administrative proceeding for injunctive relief requiring compliance with state law. The army also does not dispute TAPCB's assertion that for a period of time, the Army's operations at the Milan Army Ammunition Plant violated the Tennessee Air Quality Act.

Thus, the sole issue before the Court is the question as to whether the CAA waives the United States' sovereign immunity from state imposed civil penalties for violations of the Tennessee Air Quality Act.

The TAPCB maintains that the savings clause in the CAA citizen suit provision, § 304(e), 42 U.S.C. § 7604(e), waives the United States' immunity from state law civil penalties. Additionally, the TAPCB argues that Congress also waived the United States' sovereign immunity for punitive civil penalties imposed for violations of state air pollution control laws in the federal facilities section of the CAA, 42 U.S.C. § 7418.

The United States contends that TAPCB should be enjoined from collecting civil penalties against the United States because § 118(a) of the CAA does not waive federal sovereign immunity for state law civil penalties. The United States relies upon *United States Dept. of Energy v. Ohio*, 503 U.S. 607, 611, 112 S.Ct. 1627, 1631, 118 L.Ed.2d 255 (1992), in which the Supreme Court held that there was no waiver of sovereign immunity for state-imposed civil penalties under similar provisions of the Clean Water Act, 33 U.S.C. § 1251 *et seq.* (1994) and the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.* (1994). According to the Unit-

ed States, the Supreme Court's decision in *DOE v. Ohio* applies equally to the federal facilities provision of the Clean Air Act, and therefore the pre-*DOE v. Ohio* District Court decisions that held that CAA § 118(a) does waive federal sovereign immunity from state law civil penalties are no longer valid. Additionally, the United States maintains that TAPCB's arguments based on the language of CAA §§ 304(e) and 118 disregard the stringent legal framework for assessing the existence or scope of a purported waiver of sovereign immunity. Arguing that a waiver of the Federal government's sovereign immunity must be unequivocally and unambiguously expressed in the statutory text, the Government contends that the language in CAA §§ 304(e) and 118(a) does not come close to satisfying the level of clarity of Congressional intent required to waive the United States' immunity from state law civil penalties.

## III. DISCUSSION:

This Court finds that the Unites States of America's reliance upon the doctrine of sovereign immunity cannot be sustained given that Congress, in the text of the CAA, clearly waives that doctrine's protection. The Court reads section 118, the "Federal Facilities provision" of the CAA as stating, in plain language, such a waiver. While the plain language of Section 118 is sufficient to support a waiver, this Court's conclusion is bolstered by the text of section 304, the CAA Citizen's Suit provision. That section clearly authorizes state suits against federal facilities for recovery of civil penalties assessed under state clean air statutes. Finally, looking to the CAA's legislative history, the Court's finding is further supported by Congress' expression of absolute intent to waive sovereign immunity to the type of penalty the state of Tennessee seeks to impose.

### A. Legal Standard:

The Federal Rule of Civil Procedure which governs summary judgment motions, Fed. R.Civ.P. 56(c), provides in part that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Material facts are those which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby. Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. In the case at bar, the parties have indicated that the resolution of the matter turns on a pure question of law that can be resolved on cross-motions for summary judgment. *See* Case Management Order (Doc. No. 6, dated May 14, 1996).

### B. The Doctrine of Sovereign Immunity:

Sovereign immunity is traditionally based on the English common law doctrine which assumed that "the king could do no wrong" and therefore could not be sued without consent. *See* Randall S. Abate and Carolyn H. Cogswell, *Sovereign Immunity and Citizen Enforcement of Federal Environmental Laws: A Proposal for a New Synthesis* 15 Va.Envtl.L.J. 1, 4 (1995). The doctrine was first introduced into the federal common law of this country in 1819. *M'Culloch v. State of Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819).

A specific congressional statutory waiver permits the government to abrogate sovereign immunity and consent to suit. *See,* e.g. *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685–686, 103 S.Ct. 3274, 3277–78, 77 L.Ed.2d 938 (1983); *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941). Over time, judicial standards have developed which guide the interpretation of provisions "waiving" sovereign immunity's protection. Thus, it is well settled that any waiver of immunity "cannot be implied but must be unequivocally expressed by Congress." *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976). The majority of courts considering the issue have generally relied upon rules of statutory construction that narrowly construe waivers of sovereign immunity. *See,* e.g. *Library of Congress v. Shaw,*

478 U.S. 310, 318, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986); *McMahon v. United States*, 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951) *reh'g denied* 342 U.S. 899, 72 S.Ct. 228, 96 L.Ed. 673 (1951) (explaining that statutes waiving sovereign immunity are to be strictly construed). However, several have also recognized that when Congress enacts clear waivers of sovereign immunity, courts should not thwart congressional intent by applying an "unduly restrictive interpretation" to the waivers. *Canadian Aviator v. United States*, 324 U.S. 215, 222, 65 S.Ct. 639, 643, 89 L.Ed. 901 (1945).

In determining whether the CAA clearly expresses a waiver of sovereign immunity, the Court should look to "the whole law, and to its object and policy." *Philbrook v. Glodgett*, 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975). Rather than focusing on isolated phrases, the Court should interpret statutory provisions as effectuating a comprehensive legislative plan. If possible, every word, phrase, and passage must be given effect through judicial interpretation. *United States v. Menasche*, 348 U.S. 528, 538, 75 S.Ct. 513, 519–20, 99 L.Ed. 615 (1955); *Mountain States Tel. & Tel., v. Pueblo of Santa Ana*, 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985); *Crandon v. United States*, 494 U.S. 152, 171, 110 S.Ct. 997, 1008, 108 L.Ed.2d 132 (1990) ("An interpretation that needlessly renders some words superfluous is suspect"). In ascertaining whether or not a statutory waiver of sovereign immunity is present, the Court should give "ordinary meaning" and common usage to the statute's language. *See Kosak v. United States*, 465 U.S. 848, 853, 104 S.Ct. 1519, 1523, 79 L.Ed.2d 860 (1984).

## C. Express Waiver and the CAA Federal Facilities Provision:

Congress, acting in response to the Supreme Court's expansive interpretation of Clean Air Act sovereign immunity in *Hancock v. Train*, 426 U.S. 167, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1976), passed the 1977 Clean Air Act amendments. These 1977 amendments to the Act expressly waived federal sovereign immunity to punitive administrative penalties assessed against federal facili-

ties. Congress stated that, "in the committee's view, the language of [then] existing law should have been sufficient to insure Federal compliance in all of the aforementioned situations. Unfortunately, however, the U.S. Supreme Court construed section 118 narrowly in *Hancock v. Train.*" Congress continued that it acted "to overturn the Hancock case, and to express with sufficient clarity, the committee's desire to subject Federal facilities to all Federal, State, and local requirements—procedural, substantive, or otherwise—process and sanctions." H.R.Rep. No. 294, 95th Cong., 1st Sess. 199, reprinted in 1977 U.S.C.C.A.N. 1077, 1278.

As amended in 1977, and as retained in the 1990 Amendments to the statute, the "federal facilities" provision of the CAA holds that:

> Each department ... of the Federal government ... shall be subject to, and comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of air pollution in the same manner, and to the same extent as any nongovernmental entity. The preceding sentence shall apply ... (D) to any process and sanction, whether enforced in Federal, State, or local courts, or in any other manner. This subsection shall apply notwithstanding any immunity of such agencies ... under any law or rule of law. No officer, agent, or employee of the United States shall be personally liable for any civil penalty for which he is not otherwise liable. 42 U.S.C. § 7418 (1994).

Through it's repeated use of inclusive language, such as "any" and "all," Congress here sought to effect a far-reaching waiver of sovereign immunity to requirements, sanctions, and penalties. *See United States v. South Coast Air Quality Management Dist.*, 748 F.Supp. 732, 738 (C.D.Cal.1990) ("The plain language of the [CAA] reveals its expansiveness"). The Court in *South Coast* applied an expansive reading of the CAA's waiver language to find that section 118 waived federal government immunity from paying fees and taxes. Similarly, this Court finds that the general broad statutory language of section 118 of the CAA necessitates

an expansive reading of the term "sanctions" to include civil penalties.

In keeping with an emphasis on plain meaning, the Court notes that a sanction, in legal terms, is "[t]hat part of the law which is designed to secure enforcement by imposing a penalty for its violation or offering a reward for its observance." Black's Law Dictionary 1341 (6th ed. 1990). Backward-looking punitive fines of the sort that the TACPB wishes to exact from the United States are certainly covered by such a plain-meaning definition. Thus, it is clear that Congress, in wording the CAA to submit the federal government to any and all sanctions, however enforced, intended a sovereign immunity waiver extending to civil punitive penalties.

The United States in the case at bar, and the Court in *United States v. Georgia Dept. of Natural Resources*, 897 F.Supp. 1464 (N.D.Ga.1995) rely heavily on the holding in *Dept. of Energy v. Ohio* to support the view that the CAA has not waived sovereign immunity. In that case, the Supreme Court stated that Congress failed to waive sovereign immunity regarding administrative civil penalties under the RCRA and the CWA. However, this Court believes that both the United States in case at bar and the *Georgia Dept. of Natural Resources* Court err in their reading of *DOE v. Ohio*, as it bears upon the CAA. The relevant RCRA and CWA statutory language analyzed by the Court in *DOE v. Ohio* can be distinguished from that included within the relevant sections of the CAA at issue in the present matter. In *DOE v. Ohio*, the Supreme Court found that both the RCRA and the CWA used the phrase "process and sanction" in a fashion that indicated that those statutes waived sovereign immunity for "coercive" penalties necessary to enforce judicial process, but not for punitive penalties. *DOE v. Ohio*, 503 U.S. at 621–624, 628–629, 112 S.Ct. at 1636–38, 1639–41. The CAA does not contain additional language confining "sanctions" to "coercive" or process related penalties.

Provisions included within the CWA and the RCRA, which are absent from the CAA, define "sanctions" as penalties required to "enforce an order" or to effectuate "such injunctive relief" by a court. Under the federal compliance provision of the RCRA, "the Federal Government . . . shall be subject to, and comply with such sanctions as may be imposed by a court to enforce such relief. . . . Neither the United States, nor any agent, employee, or officer thereof, shall be immune or exempt from any process or sanction of any State or Federal Court with respect to the enforcement of such injunctive relief." 42 U.S.C. § 6961 (1988) (this Court notes that while the quoted passages remain unchanged since the *DOE v. Ohio* decision, in amending the RCRA in 1992, Congress added language which explicitly repudiated RCRA sovereign immunity). The CWA federal facilities provision states that "the United States shall be liable only for those civil penalties arising under Federal law or imposed by a State or local court to enforce an order or the process of such court." 33 U.S.C. § 1323 (1988) (language unchanged since the *DOE v. Ohio* decision).

Looking to these statutes, the Supreme Court in *DOE v. Ohio* identified a link between CWA and RCRA "sanctions" and "coercive" enforcement penalties. Thus, the relevant language of the RCRA, as worded in 1992, was textually distinguishable from section 118 of the CAA. Further, the CWA, which contained and retains language more similar to that of the CAA, also includes a unique stipulation absent from the CAA that civil penalties either "arise under Federal law" or be imposed to enforce an order of a state or local court. 33 U.S.C. § 1323(a) (1994).

At the end of CAA 118 subsection (a)(2)(D), there is a passage that provides another strong argument for finding that Congress intended an express waiver of sovereign immunity. Here, Congress noted that "[t]his subsection shall apply notwithstanding any immunity of such agencies, officers, agents, or employees under any law or rule of law. No officer, agent, or employee of the United States shall be personally liable for any civil penalty for which he is not otherwise liable." 42 U.S.C. § 7418(a)(2)(D)(1994). With the former sentence, Congress explicitly and clearly forestalled any assertion of sovereign immunity

by all governmental entities. With the latter sentence, Congress clearly exempted particular individuals, but not agencies, from one type of possible sanction, to wit, civil penalties.

Established statutory construction rules against interpretations which render statutory words or phrases meaningless. *State of Cal. v. United States Dept. of Navy*, 845 F.2d 222, 225 (9th Cir.1988). Unless sovereign immunity is waived for purposes of assessing civil penalties against the federal government by virtue of the language of CAA section 118, there is no conceivable reason why Congress would have included language exempting certain individual governmental actors from those penalties, and the phrase would be superfluous.

In addition to these express textual justifications for a CAA federal facilities sovereign immunity waiver, the Court notes that the express goals of the CAA federal facilities provision, that private **and** federal polluters be punished equitably, would be thwarted if government facilities were exempt from civil penalties. If the CAA would fail to provide for civil penalties against the federal government, a documented significant polluter, it would hamstring the goal of the 1977 CAA Amendments to "provide greater assistance for State and local governments in the administration of the Clean Air Act," and "to provide more effective ... enforcement tools for States ... to bring existing stationary and mobile sources into compliance and to assure that they remain in compliance." H.R.Rep. No. 294, 95th Cong., 1st Sess. 1–2, reprinted in 1977 U.S.C.C.A.N. 1077, 1079.

Finally, this Court's view of the language of the CAA federal facilities clause is supported by the findings of other courts, which have similarly found an explicit sovereign immunity waiver in section 118. *See Matter of: Nat. Oceanic & Atmospheric Agency Payment of Civil Penalty for Violation of Local Air Quality Standards*, Op. Comptroller Gen. No. B–191747, 1978 WL 9814 (1978); *State of Ala. ex rel. Graddick v. Veterans Admin.*, 648 F.Supp. 1208, 1211 (M.D.Ala. 1986) (reading the text of CAA section 118 to find that "Congress' intention to waive sovereign immunity could not be more clearly established"); *United States v. South Coast Air Quality Management Dist.*, 748 F.Supp. 732, 738 (C.D.Cal.1990) (concluding that "the language of the [CAA at section 118] clearly and unambiguously waives sovereign immunity").

## D. Express Waiver and the CAA Citizen's Suit Provision:

The "Citizen's Suit" provision of the CAA, section 304, allows "any person" to initiate a civil action "against any person (including (i)the United States)." 42 U.S.C. § 7604(a)(1) (1994). The CAA general definitions section, at section 302 of the CAA, explicitly cites individual states, as well as the United States, in its agencies, as "persons" under the Act. 42 U.S.C. § 7602(e). In addition, the 1977 Amendment to the citizen's suit provision stated that:

Nothing in this section or in any other law of the United States shall be construed to prohibit, exclude, or restrict any State ... from—(1) bringing any enforcement action or obtaining any judicial remedy or sanction in any State or local court, or (2) bringing any administrative enforcement action or obtaining any administrative remedy or sanction in any State or local administrative agency, department or instrumentality, against the United States, any department, agency, or instrumentality thereof ... under State or local law respecting control and abatement of air pollution. For provisions requiring compliance by the United States ... in the same manner as nongovernmental entities, see [section 118] of this title. 42 U.S.C. § 7604(e).

The final phrase cited above connects the TAPCB's right to sue under section 304 with its authority to apply any sanction in section 118, as previously indicated. The citizen's suit provision thus allows states to bring "any administrative remedy or sanction" in "any State or local administrative agency" against the United States. The civil penalty assessed against the Army by the TAPCB would fall within the category outlined by this section of the statute.

In the *National Oceanic and Atmospheric Agency* opinion, *supra*, the Comptroller Gen-

eral stated that "Congress specifically provided for the liability of federal agencies to pay civil penalties administratively imposed by the states when it ... amended section 304(e) of the Clean Air Act." 1978 WL 9814 (C.G.) at *2. Additionally, the court in *State of Ala, ex rel. Graddick* cited the availability of civil penalties in citizen suits brought by states against federal agencies. 648 F.Supp. at 1211. These interpretations find support in the text, as outlined above, and also are completely consistent with the purposes of the Clean Air Act as a whole. For citizen's suits to be effective in deterring pollution violations, as intended, they must allow for civil penalties. Otherwise, citizen's suits would offer little incentive for polluters to obey standards until a suit were actually initiated.

**E. The Legislative History of the 1977 Amendments to the CAA:**

The preceding analysis indicates that the CAA's express waiver meets the test requiring that a waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969). The maxim of statutory construction requiring the interpretation of an ambiguous waiver in favor of the sovereign is not triggered by the CAA's language, due to the statute's textual clarity. *See Ruckelshaus*, 463 U.S. at 686–686, 103 S.Ct. at 3278 (holding that a court must strictly construe a waiver in favor of the sovereign and may not extend it beyond the language of the statute).

This Court's finding that the CAA contains an express waiver of sovereign immunity is bolstered by the legislative history of the 1977 Amendments to the Clean Air Act. Reporting to Congress concerning the proposed amendment to the federal facilities section, House committee members in 1977 stated:

The applicable sanctions are to be the same for Federal facilities and personnel as for privately owned pollution sources.... This means that Federal facilities and agencies may be subject to injunctive relief (and criminal or civil contempt citations to enforce any such injunction), to civil or criminal penalties, and to delayed compliance penalties. H.R.Rep. No. 294, 95th Cong., 1st Sess. 200, reprinted in 1977 U.S.C.C.A.N. 1077, 1279.

The House's version of section 118 was subsequently adopted by the conference committee and signed into law. Clean Air Act, Pub.L. No. 95–95, § 113, 91 Stat. 685, 711 (1977).

The background to the House–Senate compromise regarding the CAA is also instructive. The House subcommittee bill that Rep. Paul Rogers introduced in 1975 would have excluded criminal or civil penalties from the sanctions available against the United States in the statute's federal facilities section. H.R.10498, 94th Cong., 1st Sess. § 113 (1975). When the full committee completed its consideration of the bill six months later, however, the subcommittee's exclusion of criminal and civil penalties had been replaced by a strong waiver of sovereign immunity, which read that "[n]either the United States nor any officer, agent, or employee thereof shall be immune or exempt from any process or sanction of any State or Federal court with respect to the enforcement of any such requirement." H.R. 10498, 94th Cong., 2nd Sess. § 113 (1976).

A Senate bill was promulgated in 1977 with a similar limited waiver to that included in Rep. Rogers' bill. S. 252, 95th Cong., 1st Sess. § 14, reprinted in S.Rep. No. 127, 95th Cong., 1st Sess. 177–78 (1977). However, in crafting the final version of the CAA, this Senate bill was rejected in favor of wording from the 1977 House bill which subjected federal facilities to "any process and sanction, whether enforced in Federal, State, or local courts or in any other manner," and "notwithstanding any immunity ... under any law or rule of law." H.R. 6161, 95th Cong., 1st Sess. § 113, reprinted in H.R.Rep. No. 294 (1977), U.S. Code Cong. & Admin. News at 1077.

Several courts have cited to the preceding legislative history as bolstering a plain reading of the CAA to include a waiver of sovereign immunity with regards to punitive penalties. *See State of Ala. ex rel. Graddick*, 648 F.Supp. at 1211 (citing H.Rep. 294 in stating that "the 1977 amendments to the CAA "clearly indicate Congress' intention of

overruling the Hancock decision" and allowing for a sovereign immunity waiver"); *State of Ohio ex rel. Celebrezze v. U.S. Dept. of Air Force,* 17 Envtl.L.Rep. at 21213, 1987 WL 110399 (citing the 1977 CAA Amendments' Conference report as stating that "the conferees intend, by adopting the House amendment, to require compliance with all procedural and substantive requirements, to authorize States to sue Federal facilities ... and to subject such facilities to State sanctions"); *Sierra Club v. Lujan,* 931 F.2d 1421, 1428 (10th Cir.1991) (quoting *Sierra Club v. Lujan,* 728 F.Supp. 1513, 1517 [D.Colo.1990] as stating that the CAA's legislative history in connection with the 1977 amendment "clearly indicates Congress' intent to waive the United States' immunity for civil penalties").

## F. Public policy and the CAA waiver of sovereign immunity:

Although policy arguments extend beyond the issues raised by the Army's removal of 330 feet of asbestos insulated piping at the Milan, Tennessee Army Ammunition plant, they reflect potential ramifications of this issue which transcend the factual scenario of the case at bar.

Commentators have noted that across the board, "the violation of pollution control laws by federal facilities poses an enormous problem." *See* Abate and Cogswell, *supra* at 9. In assessing federal facilities' propensity for environmental violations, analysts have concluded that injunctive relief is frequently not a sufficient deterrent to federal polluters. Civil penalties pose a more credible threat to federal facilities, as they are assessed immediately and accrue over the time in which a violator fails to respond. *See* Mirth White, *Can Congress Draft a Statute Which Forces Federal Facilities to Comply with Environmental Laws in Light of the Holding in the United States Department of Energy v. Ohio,* 15 Whittier L.Rev. 203 (1994). The fact that private industries comply with the CWA at two times the rate of federal facilities indicates that punitive fines, which are applied to the former group, and from which the latter group are exempt, are a more effective incentive. *See* Jerd Smith, *States Label Federal Agencies Environmental Outlaws,* Denv. Bus.J., July 23, 1990 at 19 (noting rates of federal facility CWA noncompliance); U.S. Gen. Acct. Office, *Report to Congressional Requesters: Water Pollution, Stronger Enforcement Needed to Improve Compliance of Federal Facilities* 3 (1988). Federal facilities also failed to respond to injunctive sanctions under the RCRA, before Congress amended that statute to clearly allow for the availability of punitive sanctions. *See* Elizabeth Cheng, *Lawmaker as Lawbreaker: Assessing Civil Penalties Against Federal Facilities under RCRA,* 57 U.Chi.L.Rev. 845, 863 (1990) ("Despite the undisputed availability of injunctions and court-ordered sanctions to enforce them, federal facilities have a long record of noncompliance [with the RCRA]"); *see also* 138 Cong.Rec. § 14,756 (daily ed. Sept. 23, 1992) (statement of Sen. Baucus) (noting that then current EPA statistics indicated that sixty-three percent of federal facilities had serious RCRA violations).

In addition to this direct policy rationale for applying punitive sanctions, some additional reasons should also be noted. Imposition of civil penalties can serve to put Congress on notice of the penalized agency's misconduct. This is so despite the fact that civil fines paid by agencies are usually routed towards the federal treasury rather than that of the state enforcing the penalty. *See* Michael D. Axline et al., *Stones for David's Sling: Civil Penalties in Citizen Suits Against Polluting Federal Facilities,* 2 J. Envtl.L. & Litig. 1, 41 (1987). As penalized federal facilities request additional appropriations to cope with money damages, Congress will likely apply pressure to offenders to improve their facility standards. *Id.*

Congress is acquainted with the usefulness of penalties and fines in enforcing this country's environmental legislation. The Senate Committee on Environment and Public Works in 1990 heard EPA testimony that "penalties serve as a valuable deterrent to noncompliance and to help focus facility managers attention on the importance of compliance with environmental requirements." S.Rep. 101–553, 101st Cong., 2nd Sess. 4 (1990). Officials from forty states also testified before the Senate Committee to the

effect that civil penalties are required to enforce federal facilities' compliance with environmental legislation. *Id.* at 5.

## IV. CONCLUSION:

The Supreme Court has stated that "[t]he exemption of the sovereign from suit involves hardship enough where consent has been withheld. We are not to add to its rigor by refinement of construction where consent has been announced." *United States v. Aetna Casualty and Surety Co.,* 338 U.S. 366, 383, 70 S.Ct. 207, 216, 94 L.Ed. 171 (1949) (quoting Judge Cardozo in *Anderson v. John L. Hayes Constr. Co.,* 243 N.Y. 140, 153 N.E. 28, 29–30). Congress, in addressing this issue, has also issued a plea to the Courts to avoid resorting to "ingenuity to create ambiguity." 138 Cong. Rec. H9135, 9136 (daily ed. Sept. 23, 1992). In this case, which involves the violation of environmental legislation designed to counter a problem of national proportions, the United States' insistence upon a purported broad waiver of sovereign immunity thwarts not only explicit Congressional language but also underlying Congressional policy and intent.

Thus, for all of the reasons cited above, the Court hereby GRANTS Defendant Tennessee Air Pollution Control Board's Cross–Motion for Summary Judgment and DENIES Plaintiff United States of America's Motion. Since this Court finds that the United States has failed to state a claim on which relief can be granted, this case is hereby DISMISSED.